STATE OF HAWAII, Plaintiff-Appellee, *v.* JONALINN PUAENNA SILVA, Defendant-Appellant, and IRENE L. ABILLE, Defendant.

NO. 9787

(CRIMINAL NO. 58843)

APRIL 8, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

582

OPINION OF THE COURT BY HAYASHI, J.

Irene L. Abille and Jonalinn Puaenna Silva (hereinafter "Appellant") were convicted of Attempted Theft in the First Degree (HRS §§ 705-500(1)(b), 708-831(1)(b)). Appellant alone appeals the conviction. We affirm.

I.

A Motion to Dismiss Indictments was denied by the trial court. The trial was held on January 16, 17 and 18, 1984. The State and the defense presented conflicting evidence.

### A. STATE'S EVIDENCE

On February 10, 1983, Michael Parker, a security agent at the Ala Moana store of Sears, Roebuck & Company, was in his elevated observation post behind a two-way mirror in the Infants' Wear section. He noticed Appellant for the first time as she exited the fitting room. Appellant proceeded to the display racks. She took about seven or eight items and reentered the fitting room.

Parker could see only the heads of people in the stalls. He saw Appellant move towards the last stall but could not determine if she entered it because of an obstruction. He heard the sound of rustling bags and children's voices inside. A few minutes later Appellant came out of the fitting room without the items.

Some time before Parker's observations, Abille had approached Janice Kaku, a salesclerk in the Infants' Wear section and had asked if she could use the fitting room to breast-feed her baby. She

had a baby in a stroller and another toddler alongside her. Kaku refused, but Abille entered the fitting room.

Shortly after Appellant exited[1] Abille followed out of the fitting room with her baby in the stroller and the other child. She did not have any clothes in hand. A plastic Liberty House shopping bag was on the stroller, bulging on all sides.

Parker became suspicious. He exited his observation post and asked Kaku to check the stalls in the fitting room. Kaku did so. All the stalls were empty. She found empty hangers and a baby bottle in the last stall, and she brought these items out to Parker.

Parker had kept an eye on Appellant and Abille who had moved over to the Jewelry section. He radioed Barbara Kearns, another security agent, for assistance.

Appellant and Abille entered a restroom. Kearns followed them in and saw Abille in the lounge area. Kearns exited and rejoined Parker. Appellant exited first and approached Parker. She asked him if he worked at Sears, and Parker denied that he did. Appellant was joined by Roxanne Del Mundo.

Abille came out of the restroom with her children and rejoined Appellant. Appellant and Del Mundo walked towards the exit on that floor. Abille went up the escalator to the top floor.

Abille went straight to the restroom on that floor. Kearns followed[2] Abille into the restroom. She recognized Abille by her stroller in one of the stalls. No one else was there. Kearns exited and waited for Abille.

When Abille came out, both Parker and Kearns noticed that the Liberty House shopping bag was no longer bulging. Abille went down the escalator, glancing back often. Parker followed her. Abille exited the store, and she was stopped by Parker who identified himself orally and with a badge that he was a Sears security agent. He asked Abille to come down to the security office.

Meanwhile, Kearns went back into the restroom after Abille had exited. She found infant clothes dumped in the trash can.

---

[1] Parker initially testified that Abille followed Appellant out "a couple minutes later." On cross-examination he corrected this testimony to "five seconds, six seconds, somewhere around there."

[2] The testimonies of Parker and Kearns conflicted as to who followed Abille to the top floor and whether Kearns used the escalator or the stairs.

## B. DEFENSE EVIDENCE

All three women — Appellant, Abille and Del Mundo — testified and gave a consistent account of their version of the events.

Appellant and Abille were cousins who had never done anything together. One day, Abille called Appellant, and they decided to meet for lunch the next day. They decided to meet at Sears Ala Moana but did not specify the time or the place despite it being Appellant's second trip ever to Ala Moana.

In the store neither of them made an effort to look for the other, and they never met. Del Mundo, who had never met Abille, had come along with Appellant. Del Mundo helped Appellant look for clothes for Appellant's child who was with them. They became tired. They purchased some food and left the store to sit on a bench.

Abille claimed she entered the fitting room to breast-feed her baby. When she was done she went to the restroom. It was full so she went to the one upstairs. She changed the diapers of her children and threw the used ones in the trash. She went downstairs and left the store. She was stopped by Parker who did not identify himself.

Appellant and Del Mundo, who had been sitting at a nearby bench, saw Abille for the first time.

## C.

In the course of the trial, defense counsel attempted to elicit testimony from various witnesses about events that occurred after Parker stopped Abille outside the store. The trial court determined such occurrences were irrelevant to the charges and disallowed such testimony.

Defense counsel also argued that three events should be addressed to show Parker's bias: (1) an alleged injury inflicted on Abille's baby, allegedly by Parker; (2) Parker's supervisor threatening Officer Asamura, the responding officer, who initially refused to arrest the defendants; and (3) statements by Parker to Appellant tending to indicate his focus was on Abille and not Appellant.

On two occasions offers of proof were heard outside the jury's presence. The trial court refused to admit such evidence.

 

Defense counsel made motions for judgment of acquittal at the close of State's evidence, after defense evidence and after the guilty verdict. All these motions were denied.

## II.

Initially Appellant argues that the indictment failed to allege a crime because the substantial step in the course of the illegal conduct, required for attempted crimes,[3] alleged by the State was concealing the clothes. Because stores allow customers to conceal clothes, no illegal conduct was involved.

It is true stores allow customers to take clothing items out of view into fitting rooms to be tried on. This may technically come under a dictionary definition of "conceal." But the word connotes an intent to prevent discovery. If the concealment of clothes in a bag was intended to culminate in theft, the concealment was a substantial step in the course of an illegal act.

The indictment[4] here tracked the language of the theft and attempt statutes. Such indictments have been held by this court to be sufficient. *State v. Robins*, 66 Haw. 312, 314, 660 P.2d 39, 41 (1983) (burglary). The trial court did not abuse its discretion in not dismissing the indictment.

---

[3] HRS § 705-500(1)(b) provides:

§ *705-500 Criminal attempt.* (1) A person is guilty of an attempt to commit a crime if he: . . .

    (b) Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime.

[4] The indictment read:

On or about the 10th day of February, 1983, in the City and County of Honolulu, State of Hawaii, IRENE L. ABILLE and JONALINN PUAENNA SILVA did intentionally attempt to obtain or exert unauthorized control over property of Sears Roebuck & Co., to wit, clothing, the value of which exceeds Two Hundred Dollars ($200.00), with intent to deprive the said Sears Roebuck & Co., of the property, by concealing said clothing, an act which constitutes a substantial step in a course of conduct intended or known to culminate in the commission of the crime of Theft in the First Degree, thereby committing the offense of Attempted Theft in the First Degree in violation of Sections 705-500 and 708-831(1)(b) of the Hawaii Revised Statutes.

Next, Appellant argues that the clothing items found in the trash can were never specifically identified as being in the possession of Abille or Appellant. Thus, they should not have been admitted.

It is well settled that the trial court is vested with discretion regarding the admissibility of evidence. The decision of the trial court will be reversed only if there is an abuse of such discretion. *State v. O'Daniel,* 62 Haw. 518, 527, 616 P.2d 1383, 1390 (1980).

All relevant evidence is admissible under Hawaii Rules of Evidence (HRE) Rule 402. And "relevant evidence" is defined in HRE Rule 401:

> *Rule 401 Definition of "relevant evidence".* "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The evidence need only be a building block of a *prima facie* case. It does not have to prove the case on its own. *State v. Irebaria,* 55 Haw. 353, 356, 519 P.2d 1246, 1248-49 (1974). Here, the State was constructing a case based on circumstantial evidence. The clothing items found in the trash can were clearly building blocks of the State's case allowing for the circumstantial progression of events leading to Parker's stop of Abille outside the store. The trial court did not abuse its discretion in admitting the clothing items into evidence.

Appellant further argues that the trial court should have allowed defense counsel to elicit testimony from the witnesses about alleged acts by Parker and others that would have tended to show Parker's bias towards Appellant.

HRE Rule 609.1 provides:

> *Rule 609.1 Evidence of bias, interest, or motive.* (a) General rule. The credibility of a witness may be attacked by evidence of bias, interest, or motive.

Admission of such evidence rests in the discretion of the trial court under HRE Rule 403. Offers of proof were heard outside the jury's presence. The trial court allowed certain evidence of possible bias admitted including Officer Asamura's testimony that Parker was angry when she initially refused to arrest the defendants. But, other evidence of possible bias was denied.

After a careful review of the record we conclude that this exclusion did not amount to an abuse of discretion on the part of the trial court.

Finally, Appellant argues the trial court should have granted her Motion for Judgment of Acquittal because there was no evidence she was aware Abille was going to steal. Thus, no intent was shown. She also argues the evidence was insufficient to convict because the facts presented could just as well have been consistent with innocence.

> [U]pon appeal from a denial of a motion for judgment of acquittal, the test is 'whether, upon the evidence viewed in the light most favorable to the government, and giving full play to the right of the jury to determine credibility, weigh the evidence, and draw therefrom justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'

*State v. Lima,* 64 Haw. 470, 473 n.2, 643 P.2d 536, 538 n.2 (1982) (quoting *State v. Brighter,* 62 Haw. 25, 31, 608 P.2d 855, 859 (1980)).

Here, the jury was faced with two conflicting versions of the events. They could very well have believed the State's version and disbelieved the defense version. The State's case was based on circumstantial evidence.

> It is an elementary principle of law that intent may be proved by circumstantial evidence; that the element of intent can rarely be shown by direct evidence; and it may be shown by reasonable inference arising from the circumstances surrounding the act.

*State v. Yabusaki,* 58 Haw. 404, 409, 570 P.2d 844, 847 (1977) (citations omitted).

Without enumerating the numerous links of circumstantial evidence presented by the State "we believe that the state had marshalled sufficient evidence to have enabled the jury to conclude beyond a reasonable doubt that appellant was present at the scene of the crime with the conscious object of promoting or facilitating the commission of [theft]." *Yabusaki,* 58 Haw. at 408-09, 570 P.2d at 847 (citations omitted).

Furthermore, we note that Appellant's reliance on *State v. Dudoit,* 55 Haw. 1, 514 P.2d 373 (1973) for the proposition that the State must show that the facts prove guilt beyond a reasonable doubt and that the facts must not be reconcilable with innocence is

misplaced. *Dudoit* involved a charge of arson, and this court stated: "When the state undertakes to overcome the presumption of natural origin through circumstantial evidence it must meet the further burden of disposing of any reasonable theory other than the guilt of the accused." *Dudoit,* 55 Haw. at 4, 514 P.2d at 375. This "further burden" has never been applied to cases other than arson where the origin of the fire was disputed.

There was sufficient circumstantial evidence presented in this case for a reasonable mind to fairly conclude guilt beyond a reasonable doubt.

Accordingly, the judgment of the trial court is affirmed.

*Richard F. Dvonch,* for defendant-appellant.

*Peter Van Name Esser, (Arthur E. Ross* on the brief) Deputy Prosecuting Attorneys, for plaintiff-appellee.