924 P.2d 1215

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Nelson BALISBISANA, Defendant–Appellant.**

**No. 19280.**

Supreme Court of Hawai'i.

Sept. 12, 1996.

Jon N. Ikenaga, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Defendant-appellant Nelson Balisbisana appeals from his conviction of abuse of a family or household member, in violation of Hawai'i Revised Statutes (HRS) § 709–906 (1993).[1] Balisbisana contends that the family court's ruling on plaintiff-appellee State of Hawai'i's (the prosecution) motion in limine, wherein the court excluded reference to the complaining witness's conviction for harassing Balisbisana, violated his rights, under the Hawai'i and United States Constitutions, to confront the complaining witness and cross-examine her to expose evidence of her motive for bringing false charges against him. For the reasons discussed below, we agree with Balisbisana, vacate the conviction, and remand this case for new trial.

## I. *BACKGROUND*

Beverly Fujimoto, the complainant, had lived with Balisbisana intermittently since late 1991. The following account is gleaned from Fujimoto's testimony at trial. In the week preceding July 19, 1995, Fujimoto had moved out of Balisbisana's home and was staying in a hotel while she looked for another place to live. On July 19, 1995, Fujimoto telephoned Balisbisana. When no one answered, she thought that it would be a good time to go to Balisbisana's house in Kalihi Valley to pick up some of her personal belongings because he was not there. She parked her car behind the house, and, as she walked through the yard, Balisbisana jumped out at her and scared her. She told him that she was there to pick up her things, and they went inside. As they were walking in, Balisbisana called her a "whore" and accused her of "fooling around."

Fujimoto went into the bedroom and bathroom and began packing her things. As she was bending over to put her things into a box, Balisbisana kicked her in the buttocks. He ran out to Fujimoto's car, looking for the boyfriend he imagined was hiding there, and later returned to the bedroom, punched Fujimoto in the arm, and kicked her in the leg. Fujimoto called the police, who arrested Balisbisana. The following day, July 20, 1995, Balisbisana was charged by complaint with abuse of family or household member.

Prior to the start of the jury trial on August 15, 1995, the prosecution made an oral motion in limine, requesting that Balisbisana be prohibited from adducing evidence of prior bad acts of the complainant without an offer of proof. Defense counsel objected and made the following offer of proof:

> [DEFENSE COUNSEL]: Your Honor, at this time I would make an offer of proof in regards to [Hawai'i Rules of Evidence (HRE) ] 404. I am going to be admitting and asking the complaining witness about a conviction against herself for abusing and convicted of harassing my client on July 3. Before this very same, with the family court. I am not offering it to prove that she acted in conformity there with [sic] on this occasion but I am offering it for the, under [HRE] Rule 609 point one. She is a witness and I am offering it for her mode of [sic] interest and bias in bringing this charge. And also as to her motivation and her testimony.

The following discussion ensued:

> THE COURT: As far as an offer [of] proof as to the defense you are not saying self defense in this matter. You are simply saying that one of the reasons for introducing this testimony is to show that she essentially is trying to hit back, unquote.

> [DEFENSE COUNSEL]: Her motive.

> [PROSECUTOR]: Your Honor—

> [DEFENSE COUNSEL]: That's the specific exception under 404 B.

---

1. HRS § 709–906(1) provides in pertinent part that "[i]t shall be unlawful for any person, singly or in concert, to physically abuse a family or household member[.]"

[PROSECUTOR]: Two things just came to me at this time. One thing is that ... I understand ... she pled no contest. Was there a trial on that?

[DEFENSE COUNSEL]: She entered a plea agreement.

[PROSECUTOR]: Was it a no contest?

[DEFENSE COUNSEL]: Guilty plea.

[PROSECUTOR]: You have proof of that?

[DEFENSE COUNSEL]: Yes.

. . . . .

[PROSECUTOR]: We ask that this be excluded for two reasons.

One, we have not been given prior notice of this under Rule 16. Sanctions are keeping it out.

Second, it has nothing to do with this trial whatsoever. It has nothing to do with motive. Motive, bias. The defendant has been convicted before himself. We're not bringing that in to show motive or bias. We would argue that it's irrelevant to this count on this date.

[DEFENSE COUNSEL]: Your Honor, it's not, it's highly relevant. This, her conviction date of this offense happened two weeks after her conviction. During that time they had a lot of turbulence and arguments. She was very upset about the fact that she was convicted and harassing Mr. Balisbisana so it is highly relevant.

. . . .

THE COURT: With regard to the issue of the July 3 conviction and the question of whether under Rule 404 B, evidence of other crimes, wrongs or acts—

[PROSECUTOR]: We also argue 403 is more prejudicial. That was actually the original argument [defense counsel] brought out on 404 B.

THE COURT: As to this particular charge for this alleged offense, it's your offer of proof, Mr. [defense counsel], that on this alleged offense the complaining witness made her complaint two weeks after she was convicted on July 3.

[DEFENSE COUNSEL]: That's correct. The conviction was on July 3, and date of this is July 19.

THE COURT: And by way of offer of proof, do you have evidence, you said you have a public record. I presume you have some kind of judgment.

[DEFENSE COUNSEL]: A certified copy of the judgment from our family court document office.

THE COURT: And by offer of proof what does that judgment indicate as far as sentence or punishment for the conviction?

[DEFENSE COUNSEL]: That the defendant entered a plea of guilty to the amended charge of 711–1106 subsection A, harassment, pushing, shoving or striking. That she was placed on probation for a period of 6 months. That she was ordered to report to the adult services branch within 7 days of the date of her conviction, and she was given all the regular terms and conditions of probation. She was also ordered to under go [sic] domestic violence counseling and treatment.

In addition she was ordered to under go [sic] alcohol assessment and treatment if necessary.

THE COURT: And as far as the—was she represented by counsel at the time of the July 3 entry?

[DEFENSE COUNSEL]: Yes, she was ... [b]y [a] ... court appointed attorney.

[PROSECUTOR]: We ask when the offense took place.

THE COURT: The underlying offense, a July 3 conviction.

[DEFENSE COUNSEL]: March actually.

THE COURT: March of '95.

[DEFENSE COUNSEL]: Yes.

THE COURT: At this time the court is going to grant the state's motion in limine, evidence not to be used in that—the court at this time given the current offer of proof and status of the record now believes that this evidence, the probative value of the—substantially is outweighed by the danger of unfair prejudice, confusion of issues, confusing the jury, et cetera. This is without prejudice if you wish to raise this issue again once we've heard further testimony from the victim and unless—

[DEFENSE COUNSEL]: Your Honor, may I also have a ruling as to .why this court would deny the basis of this evidence, admission of this evidence under 609 point one. Evidence of bias, interest and motive.

THE COURT: Under 609 point one—

[PROSECUTOR]: Your Honor, the State would make the argument that 403 has a reason in there. While evidence may be admissible for one purpose even though relevant may be relevant under 609 one. Definitely more prejudicial than probative.

THE COURT: Also frankly in these cases where there happens to be a series of times that parties have been brought up for domestic violence allegations, one versus the other. Quite frankly each can go back and forth and say the only reason I am here is because you complained about me before. This would be a never ending—each time 609 point one would be used for—would essentially be a see saw.

[DEFENSE COUNSEL]: What I think the key in this is that it was within two weeks. And I don't know whether the complaining witness is going to admit to it but they were having a lot of hassels [sic] between those two weeks about this incident.

. . . .

THE COURT: As far as the case in chief it is several months between March and July.

[DEFENSE COUNSEL]: I am not claiming it's that case her motive and bias is coming from. I am claiming her conviction is what upset her.

[THE COURT]: The fact she had to be here in court on July 3, 1995—

[DEFENSE COUNSEL]: And being convicted, go to probation and do an alcohol assessment. And do domestic violence counseling.

. . . .

[PROSECUTOR]: Your Honor, if the motivation was to get him to do these things he's already ordered to do these things. He's on felony parole right now for breaking her jaw and already has been ordered to do domestic violence counseling.

As far as her motive to do this, there is no motive.

THE COURT: My ruling stands. The state's motion is granted.` We can proceed then.

The jury trial commenced thereafter. Fujimoto testified as described above; she also exhibited bruises on her arms and on one leg to the jurors. In addition to Fujimoto, Honolulu Police Department (HPD) Officer Samuel Asui, who responded to Fujimoto's 911 call, was called as a witness by the prosecution. Officer Asui testified that Fujimoto told him that Balisbisana had kicked her in the buttocks and struck her in the arms and shoulder but that he did not ask to see her injuries because they were covered by her clothing.

The sole defense witness was HPD Officer Gregory Lee, who had also responded to Balisbisana's house on the evening of July 19, 1995. Officer Lee also testified that he did not see Fujimoto's injuries and that she had refused medical attention. Through direct examination of Officer Lee and cross-examination of the prosecution's witnesses, the defense attempted to establish inconsistencies between Fujimoto's testimony and the statement she had given the police on the night of the incident.

Following the one day trial, the jury returned its verdict of guilty as charged. Balisbisana filed a motion for new trial on September 1, 1995, arguing, *inter alia,* that, by precluding cross-examination of Fujimoto with respect to her conviction for harassing Balisbisana, the trial court denied him the opportunity to present a complete defense and violated his rights under the confrontation clause. On September 13, 1995, after argument by the parties, the court orally denied Balisbisana's motion, and this appeal followed.

## II. *DISCUSSION*

The only issue on appeal is the trial court's exclusion of Fujimoto's conviction for harassing Balisbisana, which Balisbisana contends violated his rights under the confrontation clauses of the Hawai'i and United States Constitutions. Violation of the constitutional

right to confront adverse witnesses is subject to the harmless beyond a reasonable doubt standard. *State v. Corella*, 79 Hawai'i 255, 261, 900 P.2d 1322, 1328 (App.1995) (citing *State v. Liuafi*, 1 Haw.App. 625, 630, 623 P.2d 1271, 1275 (1981)). "In applying the harmless beyond a reasonable doubt standard the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." *State v. Holbron*, 80 Hawai'i 27, 32, 904 P.2d 912, 917 (1995) (citations and internal quotation marks omitted).

▮▮▮ Under HRE Rule 609.1 (1993), "[t]he credibility of a witness may be attacked by evidence of bias, interest or motive." [2] The trial court's determination that the proffered evidence is probative of bias, interest or motive is reviewed under the right/wrong standard. *See State v. Kupihea*, 80 Hawai'i 307, 314, 909 P.2d 1122, 1129 (1996) (where admissibility is determined by relevance, ruling reviewed under right/wrong standard). *See also State v. Estrada*, 69 Haw. 204, 220, 738 P.2d 812, 823 (1987) ("error not to allow cross-examination to show possible bias"), *reconsideration denied*, 71 Haw. 665, 833 P.2d 899 (1990).

▮▮▮ "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." HRE Rule 403. "The determination of the admissibility of relevant evidence under HRE Rule 403 is eminently suited to the trial court's exercise of its discretion because it requires a 'cost-benefit calculus' and a 'delicate balance between probative value and prejudicial effect.'" *State v. Edwards*, 81 Hawai'i 293, 297, 916 P.2d 703, 707 (1996) (citations, internal quotation marks, and brackets omitted). *See also State v. Silva*, 67 Haw. 581, 586, 698

P.2d 293, 297 (1985) ("Admission of such evidence [of bias, interest, or motive] rests in the discretion of the trial court under HRE Rule 403.").

▮▮▮ "The scope of cross-examination is generally within the sound discretion of the trial court. While the right of cross-examination protected by the Confrontation Clause of the Sixth Amendment, 'may not be unduly restricted, ... it has never been held that this right is absolutely without restriction.'" *Corella*, 79 Hawai'i at 260, 900 P.2d at 1327 (citations omitted). However, the trial court's discretion in exercising control and excluding evidence of a witness's bias or motive to testify falsely becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant. "The Sixth Amendment is satisfied where sufficient information is elicited to allow the jury to gauge adequately a witness' credibility and to assess his [or her] motives or possible bias." *United States v. Diaz*, 26 F.3d 1533, 1539–40 (11th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995). "When the trial court excludes evidence tending to impeach a witness, it has not abused its discretion as long as the jury has in its possession sufficient information to appraise the biases and motivations of the witness." *United States v. Easter*, 66 F.3d 1018, 1022–23 (9th Cir.1995) (citations omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 1026, 134 L.Ed.2d 104 (1996).

### A. *The Trial Court Abused Its Discretion.*

▮▮▮ Balisbisana contends that the trial court violated his right to confrontation by prohibiting cross-examination that would have demonstrated that Fujimoto had a motive for fabricating the charges against him, that is, retaliation for her conviction. The prosecution argues that evidence of Fujimoto's conviction was inadmissible under HRE Rule 609, which provides in pertinent part

---

2. HRE Rule 609.1 provides:
 **Evidence of bias, interest, or motive.** (a) General Rule. The credibility of a witness may be attacked by evidence of bias, interest, or motive.
 (b) Extrinsic evidence of bias, interest, or motive. Extrinsic evidence of a witness' bias,

interest, or motive is not admissible unless, on cross-examination, the matter is brought to the attention of the witness and the witness is afforded an opportunity to explain or deny the matter.

that, "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is inadmissible except when the crime is one involving dishonesty." We disagree with the prosecution that HRE Rule 609 is controlling.

One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he [or she] would be less likely than the average trustworthy citizen to be truthful in his [or her] testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.

*Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Balisbisana was not attempting to introduce evidence of Fujimoto's conviction to impeach her general character for truthfulness. Rather, he sought to introduce evidence of the conviction for the "more particular" purpose of revealing Fujimoto's motive for falsifying charges against him.

■■■■■ An accused's right to demonstrate the bias or motive of prosecution witnesses is protected by the sixth amendment to the United States Constitution, which guarantees an accused, *inter alia*, the right "to be confronted with the witnesses against him [or her.]"[3] *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *Davis*, 415 U.S. 308, 94 S.Ct. 1105; *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (per curiam). "Indeed, the main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examina-*

tion [,] . . . [and] the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross examination." *Van Arsdall*, 475 U.S. at 678–79, 106 S.Ct. at 1434–35 (citations and internal quotation marks omitted) (emphasis in original).

In *Davis*, for example, the defendant sought to cross-examine a prosecution witness regarding his juvenile record to show that the witness may have made a hasty identification of the defendant and otherwise assisted the investigation due to fear of possible probation revocation. The Alaska Supreme Court affirmed the conviction, concluding that "counsel for the defendant was able adequately to question the youth in considerable detail concerning the possibility of bias or motive[,]" notwithstanding the exclusion of the witness's juvenile record. 415 U.S. at 315, 94 S.Ct. at 1109–10. The United States Supreme Court disagreed and reversed, stating:

We cannot accept the Alaska Supreme Court's conclusion that the cross-examination that was permitted defense counsel was adequate to develop the issue of bias properly to the jury. While counsel was permitted to ask [the witness] *whether* he was biased, counsel was unable to make a record from which to argue *why* [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. . . . On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination[.]

*Id.* at 318, 94 S.Ct. at 1111 (emphases in original).

In *Van Arsdall*, the Court reviewed the Delaware Supreme Court's reversal of the defendant's conviction where the trial court, relying on Delaware Rule of Evidence Rule

---

**3.** Article I, Section 14 of the Hawai'i Constitution contains a virtually identical provision, which this court has interpreted as also "in-

clud[ing] a right to appropriate cross-examination of the complaining witness." *State v. Calbero*, 71 Haw. 115, 124, 785 P.2d 157, 161 (1989).

403,[4] precluded the defendant from cross-examining a prosecution witness regarding the dismissal of a criminal charge against him after he agreed to speak with the prosecutor. The Court acknowledged that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." 475 U.S. at 679, 106 S.Ct. at 1435. Nonetheless, the Court agreed that the defendant's confrontation clause rights had been violated:

> In this case, however, the trial court prohibited *all* inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge. By thus cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause.

*Id.* (emphasis in original) (footnote omitted). The Court went on to reiterate the standard applicable to claims of violation of the confrontation clause:

> We think that a criminal defendant states a violation of the Confrontation Clause by showing that he [or she] was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.

*Id.* at 680, 106 S.Ct. at 1436 (citing *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111 (internal quotation marks omitted, ellipsis in original)).

The appropriate inquiry, therefore, is whether the jury had sufficient information from which to make an informed appraisal of Fujimoto's motives and bias, absent evidence of her conviction for harassing Balisbisana. If so, the trial court's limitation on Balisbisa-na's right to cross-examine Fujimoto to show motive to bring false charges and testify falsely, on the basis of "unfair prejudice, confusion of issues, confusing the jury, et cetera," was not an abuse of discretion. *See Silva,* 67 Haw. at 586, 698 P.2d 293 (trial court's exclusion of evidence of witness's bias against Appellant not an abuse of discretion where other evidence of same witness's bias was admitted). In this case, as in *Van Arsdall* and *Davis,* defense counsel was not permitted to expose the fact from which the jurors could appropriately draw inferences relating to Fujimoto's motive or bias. The trial court prohibited *all* inquiry into Fujimoto's conviction for harassing Balisbisana; yet "a reasonable jury might have received a significantly different impression of [Fujimoto's] credibility had [Balisbisana's] counsel been permitted to pursue his proposed line of cross-examination." *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. at 1436; *Corella,* 79 Hawai'i at 261, 900 P.2d at 1328 (in sexual assault trial where defendant asserted consent as defense, trial court erred in limiting questioning regarding complainant's relationship with fiance and financial situation, which could provide complainant motive to fabricate account of sexual assault and give jury significantly different impression of her credibility. (Citations and quotation marks omitted.)). Like the Court in *Davis,*

> [w]e cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [Fujimoto's] testimony which provided "a crucial link in the proof ... of [Balisbisana's] act."

*Davis,* 415 U.S. at 317, 94 S.Ct. at 1111. We therefore hold that the trial court abused its discretion in excluding evidence of Fujimoto's conviction from which the jury could have inferred that Fujimoto had a motive to bring false charges against Balisbisana and give false testimony at trial.

---

4. Delaware Rule of Evidence Rule 403 is identi- cal to HRE Rule 403.

### B. *The Error Was Not Harmless Beyond A Reasonable Doubt.*

 Denial of a defendant's constitutionally protected opportunity to impeach a witness for bias, motive or interest is subject to harmless error analysis. *Corella*, 79 Hawai'i at 261, 900 P.2d at 1328.

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Olden*, 488 U.S. at 233, 109 S.Ct. at 483–84 (quoting *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438) (internal quotation marks omitted).

 The "damaging potential" of the evidence of Fujimoto's conviction was that the jury would disbelieve Fujimoto's account of the abuse by Balisbisana and believe, instead, that Fujimoto had fabricated the charges and offered false testimony to retaliate against Balisbisana for his part in her own conviction. If this potential were fully realized, Balisbisana would have been acquitted.

Fujimoto was central to the prosecution's case. She was the only witness to testify that Balisbisana had abused her. Both Officer Asui and Officer Lee, who interviewed Fujimoto on July 19, 1995, testified that they were unable to observe any visible physical injuries on Fujimoto, who, because of HPD policy, was not asked to display injuries concealed by her clothing. As the prosecution's case rested solely on Fujimoto's testimony, her credibility was crucial. Because there is a reasonable possibility that the error complained of might have contributed to the conviction, we hold that the trial court's abuse of discretion was not harmless beyond a reasonable doubt.

### III. *CONCLUSION*

Based on the foregoing, we vacate Balisbisana's conviction and remand this case for a new trial.