**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000579
30-MAR-2021
07:53 AM
Dkt. 89 SO**

NO. CAAP-18-0000579

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
GABRIEL STAN, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1CPC-17-0001113)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant Gabriel Stan (**Stan**) appeals from the Circuit Court of the First Circuit's[1] (**Circuit Court**) Amended Judgment of Conviction and Sentence (**Amended Judgment**) entered on May 24, 2018.[2]  Plaintiff-Appellee State of Hawaiʻi (**State**) charged Stan via Complaint[3] filed on August 14, 2017 with Robbery

---

[1]    The Honorable Fa'auuga L. To'oto'o presided.

[2]    Stan's Notice of Appeal filed July 20, 2018 appealed from the Judgment of Conviction and Sentence entered on May 16, 2018, rather than from the Amended Judgment entered May 24, 2018 which reflected the correct spelling of Stan's first name.  We construe Stan's appeal as an appeal from the Amended Judgment.  See State v. Bohannon, 102 Hawaiʻi 228, 236, 74 P.3d 980, 987 (2003).

[3]    The Complaint charged as follows:

On or about August 7, 2017, in the City and County of Honolulu, State of Hawaiʻi, GABRIEL STAN, while in the course of committing theft, and while armed with a dangerous instrument, did use force against the person of Hana Okuyama, a person who was present, with intent to overcome Hana Okuyama's physical resistance or physical power of resistance and/or did threaten the imminent use of force against the person of Hana Okuyama, a person who was present, with intent to compel acquiescence to the taking of or escaping with the property, thereby committing the offense of Robbery in the First Degree, in violation of

(continued...)

in the First Degree (**Robbery First Degree**) in violation of Hawaii Revised Statutes (**HRS**) § 708-840(1)(b)(i) and/or § 708-840(1)(b)(ii) against Hana Okuyama (**Okuyama**).  Following a jury trial, Stan was found guilty as charged and sentenced to a twenty-year term of imprisonment for Robbery First Degree in violation of HRS § 708-840(1)(b)(i)(2014).[4]

On appeal, Stan contends that: (1) the Circuit Court erred by failing to *sua sponte* instruct the jury on the included offense of Robbery in the Second Degree (**Robbery Second Degree**); (2) the Circuit Court abused its discretion when it denied Stan's motion for mistrial after a witness for the State used the word "victim" twice during testimony; and (3) Stan's right to a fair trial was violated due to prosecutorial misconduct based on the prosecutor's improper question during direct examination, which unfairly undermined Stan's identification defense.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude Stan's appeal is without merit.

**(1)   Included Offense Instruction**

In his first point of error, Stan contends that the Circuit Court erred when it failed to *sua sponte* instruct the jury on the included offense of Robbery Second Degree (**Robbery**

---

[3](...continued)
    Section 708-840(1)(b)(i) and/or Section 708-840(1)(b)(ii) of the Hawaiʻi Revised Statutes.

[4]    HRS § 708-840(1)(b)(i), Robbery First Degree, states in pertinent part:
    (1) A person commits the offense of robbery in the first degree if, in the course of committing theft or non-consensual taking of a motor vehicle:

    . . . .

    (b) The person is armed with a dangerous instrument or a simulated firearm and:

    (i) The person uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance . . . .

**Second Degree**) under HRS § 708-841(1)(a) (2014)[5] because there was a rational basis in the evidence for the jury to consider that charge. Neither Stan nor the State requested an instruction for Robbery Second Degree.

The Robbery First Degree subsection (1)(b)(i) offense at issue here and Robbery Second Degree both contain the common material element of using force against the other person with intent to overcome the other person's physical power of resistance, in the course of committing theft. The higher grade offense of Robbery First Degree requires an additional material element of proof that the perpetrator be "armed with a dangerous instrument." HRS § 708-840(2) defines "dangerous instrument" as any weapon or instrument "which in the manner it is used or threatened to be used is capable of producing death or serious bodily injury." Stan argues that the jury may have found that the knife used by Stan was not a "dangerous instrument" under the Robbery First Degree statute, HRS § 708-840(1)(b), because there was evidence from which the jury could infer the knife was *not* a "dangerous instrument" under State v. Radcliffe, 9 Haw. App. 628, 645, 859 P.2d 925, 935 (1993).[6] Stan argues that from Okuyama's testimony that Stan displayed the knife and pointed it at her chest, "the jury could have concluded that the knife being pointed at her chest was inadvertent or incidental." Stan urges that the jury "could have decided that, in the manner in which Stan held or used the knife, or threatened to use it, the

---

[5] HRS § 708-841(1)(a), Robbery Second Degree, provides that "[a] person commits the offense of robbery in the second degree if, in the course of committing theft" the person "uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance[.]"

[6] In Radcliffe, we held that the trial court's instruction to the jury in a Robbery First Degree case, that "[a] knife is a dangerous instrument" was a misstatement of the law and improperly "took the question of the knife's use from the jury." 9 Haw. App. at 645, 859 P.2d at 935. We concluded, "[t]his was especially prejudicial to Defendant in view of [complainant]'s and [witness]'s trial testimony that Defendant was merely waving the knife around and not holding it against [complainant]'s throat" as they indicated in their previous statements to the police. Id.

evidence did not establish it was a 'dangerous instrument' beyond a reasonable doubt."

Where an omission of jury instructions is at issue on appeal, "the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." State v. Flores, 131 Hawaiʻi 43, 57-58, 314 P.3d 120, 134-35 (2013) (internal citations, alterations, and quotation marks omitted). A "trial court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Id. at 50, 314 P.3d at 127 (internal citations omitted).

In this case, Okuyama testified that once she stepped outside the McDonald's on Kūhiō Avenue, a male she identified as Stan approached her after he had been following her, and when he came within a one-foot distance of her, Stan showed his knife, threatened her, and demanded her bag. Stan pulled Okuyama's bag, which was hanging from her arm, and pointed the knife directly at her chest, below her left shoulder. Stan's pulling caused Okuyama to fall when Okuyama did not let go of the bag. Okuyama fell from the steps outside the McDonald's and onto the ground. Okuyama's knees were scratched and bloody from the fall. Okuyama was "very scared." Stan ran away, but Okuyama saw him two to three hours later when the police had detained him, and she identified Stan as the male who had tried to take her bag.

Okuyama's account of the robbery incident was corroborated by two eyewitnesses. Eyewitness Shangrila Peralta (**Shangrila**), a resident from Washington who was visiting Honolulu with her family for a wedding, testified that she saw a white male, whom she identified as Stan, pull shopping bags from an Asian female (Okuyama) who was screaming. Stan pulled Okuyama down off the steps of McDonald's while tugging at Okuyama's bag. As Okuyama fell to the ground, Shangrila told the male to stop. Stan paused and looked at Shangrila before running off.

Shangrila's brother, eyewitness Czardemund Peralta (**Czar**), also heard a loud scream and saw a male throw a Japanese female onto the ground. Czar saw a male holding a knife and struggling to pull the female's purse or shopping bag away from her, before he ran off. Czar identified the male as Stan. Czar immediately chased Stan down Kūhiō Avenue and Seaside Avenue. Czar said he chased Stan because he "actually thought [Stan] had stabbed her 'cause I saw the knife," and Czar didn't want Stan to run away. After checking to see that Okuyama was okay, Shangrila then ran after Czar to make sure he was okay. Later, Honolulu Police Department (**HPD**) officers recovered a white plastic bag from Shangrila which turned out to contain, a "[t]urquoise kitchen-type knife with an 8-inch blade," which was submitted as evidence. Shangrila testified that Stan had the white plastic bag in his hand during the incident. A bystander gave Shangrila the white plastic bag as she was chasing Czar and Stan, and the bystander told Shangrila that Stan had dropped it.

Based on our review of the evidence as to the element of "dangerous instrument," there was no rational basis in the record for the jury to acquit Stan of Robbery First Degree and convict him of Robbery Second Degree. See Flores, 131 Hawaiʻi at 50, 314 P.3d at 127. Stan's contention is without merit.

**(2) Motion for Mistrial**

In his second point of error, Stan contends that the Circuit Court abused its discretion by refusing to grant Stan's oral motion for a mistrial for a violation of a motion in limine, because the State's police officer witness used the word "victim" twice during his testimony. The first occurrence was when the officer described his arrival at the scene on August 7, 2017:

> Q    Where did you proceed to from your location on Kalakaua?
>
> A    From that particular area, I went to Kalakaua and Seaside, which is in Waikiki where H&M is right now. That's where I saw some of the bystanders flagging me down about the incident, and the male had taken off from that area. So I then asked where did the incident occur, and they led me or they told me that it happened on Kuhio

> Q    Okay.
>
> A    -- to figure out if she needed treatment first and what happened.

(emphasis added).  Stan did not object at this point during the officer's testimony.  When the second reference to the term "victim" occurred, defense counsel moved to strike the response, and the Circuit Court promptly did so, as follows:

> Q    Okay.  At that point what was the purpose of detaining the defendant?
>
> A    Since the defendant matched the description, I just wanted to make sure that that was positively the male that the <u>victim</u> had been looking for, we had been looking for.
>
> [DEFENSE COUNSEL]:  Move to strike the response, Your Honor.
>
> THE COURT:  Okay.  <u>Part of the officer's description of the complainant as the victim, you folks have to disregard that statement by the police officer.</u>

(emphases added).  When Stan orally moved for a mistrial the following day, the Circuit Court denied the motion.

"The denial of a motion for mistrial is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion."  <u>State v. Plichta</u>, 116 Hawaiʻi 200, 214, 172 P.3d 512, 526 (2007) (citing <u>State v. Rogan</u>, 91 Hawaiʻi 405, 411, 984 P.2d 1231, 1237 (1999)).  Counsels and witnesses should refrain from using the term "victim," as the term is "conclusive in nature and connotes a predetermination that the person referred to had in fact been wronged."  <u>State v. Mundon</u>, 129 Hawaiʻi 1, 26, 292 P.3d 205, 230 (2012) (citing <u>State v. Nomura</u>, 79 Hawaiʻi 413, 416, 903 P.2d 718, 721 (App. 1995)).  Avoiding the use of the term "victim" in a trial is consistent with the principles of the "presumption of innocence and the maintenance of fairness and impartiality during the trial[.]"  <u>Id.</u>  In <u>Mundon</u>, where two witnesses referred to the complainant as "victim" in their testimony, the supreme court found reversal

of the conviction was not warranted where "the use of the term 'victim' in the limited circumstances of th[e] case was not prejudicial" to the defendant.  Id. at 26, 292 P.3d at 230.  In State v. Austin, 143 Hawaiʻi 18, 31, 422 P.3d 18, 31 (2018), the supreme court held in a murder case, where "there was no dispute as to whether [the decedent] had been the object of a crime, and the key issue at trial was the identity of the perpetrator, the State's use of the term 'victim' did not connote Austin's guilt." (brackets added) (emphasis in original).  Under these circumstances, the supreme court concluded that the trial court did not err in permitting the State or its witnesses from referring to the decedent as "the victim" at trial.  Id.

In this case, while the police officer witness improperly used the term "victim" twice, the Circuit Court immediately struck the response and provided a curative instruction to the jury.  Juries "are presumed to . . . follow all of the trial court's instructions." State v. Knight, 80 Hawaiʻi 318, 327, 909 P.2d 1133, 1142 (1996) (citation omitted). The minimal use of the term "victim" in this case, by a single witness twice in his testimony, promptly cured by the Circuit Court, did not constitute prejudice warranting reversal of Stan's conviction.  See Mundon, 129 Hawaiʻi at 26, 292 P.3d at 230. Similar to the situation in Austin, where there was no dispute in this case that Okuyama had been the object of a robbery, and the key issue at trial was identification, a single witness's use of the term "victim" twice during his testimony, did not connote Stan's guilt.  See Austin, 143 Hawaiʻi at 31, 442 P.3d at 31. There was no abuse of discretion by the Circuit Court in denying Stan's motion for mistrial under these circumstances.  See id.; Plichta, 116 Hawaiʻi at 214, 172 P.3d at 526.

**(3) Violation of the Motion in Limine**

In his third point of error, Stan contends that he was denied his right to a fair trial and suffered from prosecutorial misconduct when the State's improper question led an HPD officer to testify that the knife recovered in the robbery investigation

was the same knife the officer observed in Stan's possession earlier on the same day of the incident, in violation of a motion in limine. Stan argues that because his defense at trial was misidentification, the HPD officer's improper testimony undermined his defense.

"The term 'prosecutorial misconduct' is a legal term of art that refers to *any* improper action committed by a prosecutor, however harmless or unintentional." State v. Maluia, 107 Hawaiʻi 20, 25, 108 P.3d 974, 979 (2005)(italics and internal quotation marks in original). "Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of 'whether there is a reasonable possibility that the error complained of might have contributed to the conviction.'" Austin, 143 Hawaiʻi at 28, 422 P.3d at 28 (citing State v. Sawyer, 88 Hawaiʻi 325, 329 n.6, 966 P.2d 637, 641 n.6 (1998) (quoting State v. Balisbisana, 83 Hawaiʻi 109, 114, 924 P.2d 1215, 1220 (1996))). "Prosecutorial misconduct warrants a new trial or the setting aside of a guilty verdict only where the actions of the prosecutor have caused prejudice to the defendant's right to a fair trial." Id. at 39-40, 422 P.3d at 39-40 (quoting State v. Clark, 83 Hawaiʻi 289, 304, 926 P.2d 194, 209 (1996) (quoting State v. McGriff, 76 Hawaiʻi 148, 158, 871 P.2d 782, 792 (1994))). When determining whether the alleged prosecutorial misconduct rises to the level of reversible error, this court considers three factors: (1) the nature of the alleged misconduct; (2) the promptness or lack of a curative instruction; and (3) the strength or weakness of the evidence against the defendant. Id. at 40, 422 P.3d at 40.

In this case, the State questioned the officer about the knife and the officer's prior observation of that knife, as follows:

> Q    [(PROSECUTOR)]: Okay. Did you ever learn that a knife had been used?
>
> A    [(POLICE OFFICER WITNESS)]: Yes.

Q     And did you get a description of the knife?

A     Yes, I did.

Q     And what was the description of the knife that you got?

A     It was a blue – bluish turquoise knife is the color that it was, inside of a sheath.

Q     Did you – had you seen this knife before?

A     Yes, I have.

Q     And can you I guess – can you – in general terms can you describe to the jury when you saw this turquoise knife.

A     On the same day that I had gotten this flag-down, I had arrested a male on that same morning, early in the morning. And that male that I had arrested in that instant, he relayed to me that he had a knife on his waistband. He then showed me the knife, exposed the knife, and <u>it was that same bluish turquoise knife that I observed in that investigation that night.</u>

      [DEFENSE COUNSEL]: Objection. Move to strike. Motions in limine.

(emphasis added).  During a bench conference, defense counsel referenced the following ruling made, prior to the start of trial, during a March 5, 2018 motions in limine hearing:

      [DEFENSE COUNSEL]:  The specific ruling in motions in limine is he could describe what he saw earlier that day but not make the conclusion that it was the same knife. I think that was specifically ruled on by the Court.  And he has since testified that it's the same knife.  So I think that needs to be, No. 1, stricken.  And you know, at this point I'm going to ask for a mistrial.

      THE COURT:  The officer is about to testify -- isn't the testimony that the defendant is seen, observed with the knife?

      [DEFENSE COUNSEL]: Right.  But I specifically asked after that that he cannot make the conclusion that it's the same knife.

      [PROSECUTOR]: I can just ask him to -- to describe.

      THE COURT: The Court will give you a cautionary instruction to strike the part of the officer's answer concluding that the knife is the same knife.

      [DEFENSE COUNSEL]: Your Honor, while I'm here, I'm going to make a motion for mistrial because it's a violation of the motions in limine.  This is a police officer and the prosecution should have advised him not

to make this statement.

THE COURT: All right. Motion denied.

. . . .

THE COURT: All right. Officer, resume your chair before we continue.

<u>Ladies and gentlemen, part of the officer's answer indicating the knife that he had seen earlier is the same knife involved in the incident -- you folks are ordered to disregard this part of the answer from the police officer</u>. Okay? Thank you very much.

(emphasis added). We apply the three factors to the trial record to determine whether the prosecutorial misconduct rises to the level of reversible error. See <u>Austin</u>, 143 Hawaiʻi at 40, 422 P.3d at 40.

The first factor requires consideration of the nature of the misconduct. The prosecutor's question to the officer as to whether he had seen "<u>this</u> knife before" violated an *in limine* ruling that prohibited the officer's conclusion that the knife recovered in the robbery case was the "same knife" as the one the officer had seen Stan in possession of earlier that same day.[7]

---

[7]      The Circuit Court's *in limine* ruling was less than clear, on the one hand precluding the "same knife" testimony, but also allowing the prosecutor to elicit testimony from the officer who recovered "the knife that turned out to be the same knife." The pertinent portion of the transcript reads:

THE COURT: So you may -- you may refer to this earlier incident minus any testimony going to defendant seen stabbing a tree.

[DEFENSE COUNSEL]: Your Honor, I would also ask that the conclusion that it's the same knife not be allowed.

THE COURT: Take out the same knife, but knife of the same color found -- describe the knife and this is the color of the knife, and then take it from there to your -- your arresting officer who recovered the same, the knife that turned out to be the same knife.

[PROSECUTOR]: Okay.

THE COURT: So -- okay. So earlier -- so State allowed to elicit testimony about a knife. Defendant arrested earlier as indicated by defense counsel and a knife was found on him. Okay. That's fine minus the testimony about seeing the defendant stabbing the tree earlier with the knife. Okay?

[DEFENSE COUNSEL]: And just the description; right?

(continued...)

(emphasis added). This was misconduct. See Maluia, 107 Hawaiʻi at 25, 108 P.3d at 979.

Because the improper question constituted prosecutorial misconduct, we examine the second factor regarding the promptness or lack thereof, of any curative instruction to the jury. See Austin, 143 Hawaiʻi at 40, 422 P.3d at 40. Here, a curative instruction was promptly given to the jury, which was specifically told to disregard the "same knife" testimony. The jury is presumed to have complied with the Circuit Court's instruction. See State v. Underwood, 142 Hawaiʻi 317, 327, 418 P.3d 658, 668 (2018) (when a trial court promptly addresses the impropriety, the improper remarks are generally considered cured by the court's instruction to the jury because "it is presumed that the jury abided by the court's admonition to disregard the statement.") (quoting State v. McGriff, 76 Hawaiʻi 148, 160, 871 P.2d 782, 794 (1994)).

The third factor requires consideration of the strength or weakness of the evidence against the defendant. See Austin, 143 Hawaiʻi at 40, 422 P.3d at 40. The evidence against Stan in support of the Robbery First Degree charge was strong. Okuyama, a 19-year-old university student from Japan, was walking back to her hotel alone, when she noticed Stan followed her and "smiled at her," which made her "nervous" and "very scared." Okuyama unequivocally identified Stan as the person who had been following her and waiting for her outside of McDonalds, when he robbed her by threatening her with a knife and pointing it at her chest. Czar confirmed seeing Stan trying to pull Okuyama's bags from her while he had a knife. Czar saw this from a "pretty

---

[7](...continued)

      THE COURT: Yes.

      [DEFENSE COUNSEL]: Okay.

      THE COURT: All right. So Ms. Prosecutor, please make note of that.

      [PROSECUTOR]: Yes.

close" distance, "[m]aybe 15 feet" away.  Eyewitness Shangrila also saw the incident between Stan and Okuyama from about 20 feet away and corroborated Okuyama's account of what occurred. Shangrila turned in a white plastic bag that another bystander had given to her after the chase, explaining that Stan had dropped it.  Shangrila had also seen Stan holding the white bag during the robbery incident.  Shangrila handed over the white bag to the police.  The bag contained the knife.  There was overwhelming evidence to support the jury's verdict that Stan was the person responsible for robbing Okuyama while threatening her with a knife.  We conclude that any misconduct in this case does not rise to the level of reversible error, nor was Stan denied his right to a fair trial.  See Austin, 143 Hawaiʻi at 39-40, 422 P.3d at 39-40.

Therefore, IT IS HEREBY ORDERED that the Amended Judgment of Conviction and Sentence, entered May 24, 2018, in the Circuit Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawaiʻi March 30, 2021.


On the briefs:                        /s/ Katherine G. Leonard
                                      Presiding Judge
William K. Li,
for Defendant-Appellant               /s/ Clyde J. Wadsworth
                                      Associate Judge
Donn Fudo,
Deputy Prosecuting Attorney           /s/ Karen T. Nakasone
City and County of Honolulu           Associate Judge
for Plaintiff-Appellee