65 P.3d 119

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Tuvale PESETI, Defendant–Appellant.**

No. 23345.

Supreme Court of Hawai'i.

Feb. 25, 2003.

As Corrected Feb. 27, 2003.

Deborah L. Kim, Deputy Pubic Defender, on the briefs, for the defendant-appellant, Tuvale Peseti.

James M. Anderson, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellee, State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, and ACOBA, JJ., and Circuit Judge HIFO, Assigned by Reason of Vacancy.

Opinion of the Court by LEVINSON, J.

■ The defendant-appellant Tuvale Peseti appeals from the amended judgment of the family court of the first circuit, the Honorable Virginia Lea Crandall presiding, convicting him of and sentencing him for one count of sexual assault in the third degree, pursuant to Hawaii Revised Statutes (HRS) § 707–732(1)(b) (1993).[1] On appeal, Peseti contends that the family court erred in: (1) prohibiting defense counsel from cross-examining the complainant regarding her recantation of her allegations of sexual abuse by Peseti, on the basis that her recantation fell within either the statutory privilege set forth in Hawaii Rules of Evidence (HRE) Rule 505.5(b) (1993) or HRE Rule 504.1(b) (1993),[2] thereby violating Peseti's constitutional right to confront adverse witnesses as guaranteed by article I, section 14 of the Hawai'i Constitution and the sixth amendment to the United States Constitution;[3] (2) ordering that the complainant's Child Protective Services (CPS) file be sealed, on the basis that the information contained therein constituted privileged communications under either HRE Rule 505.5(b) or HRE Rule 504.1(b), see supra note 2, thereby violating Peseti's due process rights under the fifth and fourteenth amendments to the United States Constitution and article I, section 5 of the Hawai'i Constitution;[4] and (3) denying defense counsel's oral motion for a mistrial, where the complainant's testimony that Peseti had attempted to sexually abuse her a second time and that she had previously been subjected to sexual abuse by Peseti's son substantially prejudiced Peseti's right to a fair trial. We agree that the family court's refusal to per-

1. HRS § 707–732 provides in relevant part:

    **Sexual assault in the third degree.** (1) A person commits the offense of sexual assault in the third degree if:

    . . . .

    (b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]

    . . . .

    B. Sexual assault in the third degree is a class C felony.

2. HRE Rule 504.1 provides in relevant part:

    **Psychologist-client privilege.**

    . . . .

    (b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of counseling or psychotherapy with respect to behavioral problems, including substance addiction or abuse, among oneself, the client's psychologist, and persons who are participating in the counseling or psychotherapy under the direction of the psychologist, including members of the client's family.

    HRE Rule 505.5 provides in relevant part:

    **Victim-counselor privilege.**

    . . . .

    (b) General rule of privilege. A victim has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to a victim counselor for the purpose of counseling or treatment of the victim for the emotional or psychological effects of sexual assault, domestic violence, or child abuse or neglect, and to refuse to provide evidence that would identify the name, location, or telephone number of a safe house, abuse shelter, or other facility that provided temporary emergency shelter to the victim.

3. Article I, section 14 of the Hawai'i Constitution (1978) provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused[.]"

    The sixth amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"

4. The fifth amendment to the United States Constitution provides in relevant part that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]"

    The fourteenth amendment to the United States Constitution provides in relevant part that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law[.]"

    Article I, section 5 of the Hawai'i Constitution provides in relevant part that "[n]o person shall be deprived of life, liberty or property without due process of law[.]"

mit defense counsel to cross-examine the complainant regarding her recantation of her allegations of sexual abuse by Peseti violated his constitutional right to confront adverse witnesses under the Hawai'i Constitution. We disagree, however, that the family court erred in ordering the complainant's CPS file to be sealed, inasmuch as the contents of the file constituted privileged information under the HRE. Accordingly, we vacate the family court's amended judgment of conviction and sentence and remand this matter to the family court for a new trial.[5]

## I. BACKGROUND

### A. Procedural Background

On March 3, 1999, Peseti was charged by indictment with one count of sexual assault in the third degree, in violation of HRS § 707–732(1)(b), see supra note 1, for knowingly subjecting his thirteen-year-old hānai[6] daughter [hereinafter, "the complainant"] to sexual contact. During pretrial discovery, defense counsel served CPS with a subpoena duces tecum, requesting access to the complainant's records and files relating to the charged offense. On September 20, 1999, the family court conducted a hearing on the return of the subpoena, at which time Bernard Hvidding, the CPS social worker assigned to the complainant's case, delivered the requested records and files, which comprised more than three hundred redacted and unredacted pages, to the family court. During the hearing, defense counsel requested discovery of all material contained therein that was relevant to the complainant's credi-

bility, alibi, Peseti's state of mind, and mistake. The family court thereafter received the CPS records into custody for an in camera review. Upon review of the complainant's file, the family court released redacted portions to defense counsel and sealed the remainder for appellate review.

On January 19, 2000, prior to the commencement of jury selection, defense counsel objected to the limited extent of the CPS records that had been released by the family court:

[Defense counsel]: Your Honor, could I just place a brief objection as to the CPS records that were turned over, just for the record?

The Court: Yes.

[Defense counsel]: I believe that the files that were turned over by Mr. Bernard Hvidding were ... two inches thick, if not more. In this case[,] ... I have 11 pages of police reports that consist solely of [Honolulu Police Department (HPD)] Detective [Robert] Towne's closing report and nothing else.

. . . .

Basically, I had no background information in the police report as to how the complaint was made, to who[m] it was made, or what was said in the initial complaint. . . .

As far as the counselor, I just recently found out through the CPS worker. who the school counselor was and apparently she's relocated to the mainland, so I was unable to talk to her.

---

**5.** We do not reach Peseti's final point of error, inasmuch as the record reflects that the family court did not abuse its discretion in denying Peseti's motion for a mistrial. Peseti argues that the family court's refusal to give a cautionary instruction to the jury regarding the complainant's testimony that Peseti had attempted to sexually abuse her a second time and that she had been subjected to sexual abuse by Peseti's son substantially prejudiced Peseti's right to fair trial. Assuming arguendo that the family court erred in permitting the complainant to testify regarding the foregoing, the error was harmless, because the family court struck the complainant's testimony regarding the second incident of alleged abuse. Moreover, the complainant immediately clarified during further direct examination that her statement, "Not again," referred to the repeated sexual abuse by her brother and that her

allegations against Peseti stemmed from an isolated incident on New Year's Day 1998. See State v. Lagat, 97 Hawai'i 492, 495, 40 P.3d 894, 897 (2002) ("The denial of a motion for mistrial is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion.").

**6.** "Hānai means 'foster, adopted.' M.K. Pukui & S.H. Elbert, Hawaiian Dictionary 56 (Rev. Ed.1986). The child is not necessarily legally adopted." State v. Suka, 79 Hawai'i 293, 302 n. 7, 901 P.2d 1272, 1281 n. 7 (App.1995). Peseti and his wife assumed the care-taking responsibilities for the complainant shortly after she was born. The Peseti family includes an additional fourteen children, some of whom are adults and no longer residing in the home.

. . . .

As far as what was turned over, it's very brief, even the pages that were turned over was [sic] redacted. But my concern there is . . . that on the second set of forms that were turned over, there are two paragraphs that were turned over. And, basically, they state that [the complainant] was interviewed by Detective Towne and social worker Debbie Hervey, and then everything after that is redacted. . . .

And, clearly, Your Honor, the interview was concerning this particular case and this incident. And any prior statements, especially by the complainant, I believe they should have had access to because this was written by the social worker who was present at the school when the initial allegations were made.

So my problem is that we weren't able to know what witnesses were originally there. It's my understanding . . . that [the complainant] did recant. And [the DPA] has expressed concerns about that in the pretrial [conference] about whether or not there would be [a] recantation [at trial].

But when I spoke to Mr. Hvidding last week, he told me that she did tell a counselor that it did, in fact, not happen. And was then questioned further by him and other people and then said, okay, it did happen. But clearly that's exculpatory and it's also admissible. And I presume that would have been in the files. Basically, that's my objection, Your Honor.

The Court: The statements that were given, . . . have you received either the video tape or transcript of those statements?

[Defense counsel]: I have the video tape.

[DPA]: The video tapes have been transcribed as well.

[Defense counsel]: And they were transcribed. But, again, Your Honor, this is the social worker's version of what occurred and she was there.

Also[,] I am sure other statements were made by [the complainant] during this time period, including whether she redacted [sic]. And, again, we were not given access to that.

The Court: Your objection is noted for the record. Any other matters?

[DPA]: . . . .

With respect to Mr. Hvidding, I haven't had a chance to talk with him, he was out sick yesterday. And while I did have concerns about [the complainant] recanting, because that's the information that I had, she was fine with me yesterday in our interview. I don't know if she's recanted to Mr. Hvidding or if he's just hearing that from the therapist. And if that's the case, then I would object to him testifying about it because it would be hearsay. But I think that we can take that up later on as we get closer to those particular witnesses, Your Honor.

### B. *Factual Background*

Peseti's jury trial commenced on January 20, 2000. For present purposes, we briefly summarize the relevant facts adduced at trial. On or about December 31, 1997, the complainant accompanied her hānai mother and Peseti to assist in the family's daily newspaper-delivery route. While en route to pick up another vehicle in Pālolo, the complainant and Peseti were laying down in the back part of the family pick-up truck covered with a blanket. The complainant testified that Peseti placed his right hand between her thighs and moved his hand inside her shorts toward her vagina. Peseti attempted to place his hand inside the complainant's vagina but was unable to lift up her underwear because the elastic was too tight. Within seconds, Peseti removed his hand from the complainant's shorts. Peseti cautioned the complainant three times not to disclose what had happened in the truck.[7]

The complainant nevertheless confided in one of her sisters [hereinafter, "the confi-

---

7. On June 5, 1998, Peseti told the complainant "to change [her] story" during a supervised visitation with CPS. Thereafter, in November 1999, Peseti arrived at the complainant's school to drive her home; Peseti had never previously picked the complainant up from school. During their travel homebound, Peseti told the complainant not to disclose to anyone what had happened on New Year's day of 1998.

dante sister"] and explained to her what Peseti had done on New Year's morning. The complainant and the confidante sister decided that they wanted "to get out of the home" and subsequently agreed to speak to their school counselor regarding their volatile home environment.[8] The school counselor arranged a meeting with CPS, at which time the complainant discussed several incidents of sexual abuse by her brother, habitual "lickings" by her oldest sister and her hānai mother, an excessive amount of mandatory household chores, and the alleged sexual abuse by Peseti. That same day, CPS placed the complainant and the confidante sister in a foster home.

During cross-examination, defense counsel questioned the complainant as to whether she had fabricated her allegations of sexual abuse by Peseti in order to "get out of the [Peseti] home." The complainant denied that she had stated to another of her sisters that the New Year's day incident had never occurred.[9] The complainant, however, acknowledged that the confidante sister inquired as to why she had lied about their father's alleged sexual abuse. The complainant explained that she was angry that the confidante sister no longer believed her allegations but reiterated that the confidante sister claimed to believe her when they decided to speak to their school counselor.

Defense counsel then questioned the complainant as to whether she had previously recanted her allegations of sexual abuse by

Peseti. Specifically, defense counsel inquired as follows:

> [Defense counsel]: And isn't it true that ... you also told your therapist at one point that this really didn't happen?
>
> [DPA]: Objection, Your Honor.
>
> The Court: Counsel, can you approach the bench, please.
>
> (The following proceedings were held at the bench:)
>
> [DPA]: I believe that violates confidential information, patient privacy, Your Honor.
>
> [Defense counsel]: Your Honor, it goes to credibility and it goes to [the] defendant's right to a fair trial. Basically, if she did say that, that's something that the jury needs to know.
>
> The Court: Isn't that a privileged communication for which there is no demonstration of a waiver at this point?
>
> [Defense counsel]: Basically, what I'm asking her is whether at some point she recanted.
>
> [DPA]: But that doesn't address the issue with respect to that breaking a privileged communication.
>
> [Defense counsel]: Even if it's technically a privilege [sic] communication, Your Honor, I believe that there are constitutional rights involved here, due process rights [to a] fair trial, that would override any Hawai'i Rules of Evidence rule.
>
> The Court: Objection is sustained. Privileged.

---

8. The complainant testified that she and the confidante sister commenced their discussion about leaving the Peseti residence after their younger sister had been removed by CPS for arriving at school with soiled clothes, lice in her hair, and a bruised eye; she believed that, by disclosing her allegations of sexual abuse to the school counselor, CPS would likely remove them from the Peseti home as well. The complainant further explained that her desire to leave the Peseti residence commenced after the subject incident.

   The confidante sister also testified that the sole purpose of her conversation with the school counselor was to be removed from the Peseti residence, because she had received too many "lickings" from her oldest sister and her mother. The confidante sister, however, characterized Peseti as "a good father.... He's quiet. He

never does hit [the children]." She denied that she wanted to leave the household because of Peseti and testified that she refused to call the police in response to the complainant's allegations of sexual abuse "because [she] didn't believe her.... Because [her] dad wouldn't do that." The confidante sister testified that she lied to HPD Detective Towne when she stated that Peseti also touched her inappropriately, "because that's what [she] thought they wanted [her] to say." She acknowledged that her relationship with the complainant has deteriorated since they had been placed in a foster home and explained that the complainant resented her for disbelieving her allegations of sexual abuse. She further testified that she felt "sad" about "getting [her] father into trouble."

9. This sister testified that the complainant expressly told her that Peseti "didn't do it."

On January 24, 2000, the jury returned a guilty verdict as to the charged offense. Upon granting Peseti's motion for reconsideration of sentence on April 17, 2000,[10] the family court sentenced Peseti to a five-year term of probation, subject, as a condition of probation, to thirty days of incarceration with credit for time served, and ordered that Peseti participate in the Hawai'i Sex Offender Treatment Program. On April 10, 2000, Peseti filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

### A. Questions Of Constitutional Law

■ "We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,'" and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard." *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (citations omitted).

*State v. Aplaca,* 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001).

[A] [v]iolation of the constitutional right to confront adverse witnesses is subject to the harmless [-]beyond[-]a[-]reasonable[-]doubt standard. (Citation omitted.) "In applying the harmless[-]beyond[-]a[-] reasonable[-]doubt standard[,] the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction."

*State v. Balisbisana,* 83 Hawai'i 109, 113–14, 924 P.2d 1215, 1219–20 (1996) (citation omitted). "Mere sufficiency of the evidence to support the jury verdict, apart from that aspect of the case affected by the error, would not be enough." *State v. Pokini,* 57 Haw. 26, 30, 548 P.2d 1402, 1405 (1976) (citation omitted).

### B. Limitations On Cross–Examination

■ The law is settled that

the scope of cross-examination at trial [is] ... within the discretion of the trial court.... The trial court's exercise of its discretion to limit the scope of cross-examination will not be ruled as reversible error when it limits irrelevant and repetitious questions by counsel [and the limitation does] not result in any manifest prejudice to the defendant.

*State v. Okumura,* 78 Hawai'i 383, 399, 894 P.2d 80, 96 (1995) (quoting *State v. Young,* 8 Haw.App. 145, 151, 795 P.2d 285, 290 (quoting *State v. Faulkner,* 1 Haw.App. 651, 654–55, 624 P.2d 940, 943–44 (1981)), *cert. denied,* 71 Haw. 669, 833 P.2d 901 (1990)) (some brackets and ellipses added and some in original).

*State v. Cordeiro,* 99 Hawai'i 390, 404, 56 P.3d 692, 706, *reconsideration denied,* 100 Hawai'i 14, 58 P.3d 72 (2002).

### C. Scope Of Discovery

■ We review a trial court's ruling limiting the scope of discovery under the abuse of discretion standard. *State v. Fukusaku,* 85 Hawai'i 462, 477–78, 946 P.2d 32, 47–48 (1997). A trial court's denial of a discovery request based on relevance, however, will be reviewed under the right/ wrong standard. *See State v. Estrada,* 69 Haw. 204, 216–17, 738 P.2d 812, 821–22 (1987).

*State v. White,* 92 Hawai'i 192, 198, 990 P.2d 90, 96 (1999).

### D. The Admissibility Of Evidence

■ The admissibility of evidence requires different standards of review depending on the particular rule of evidence at issue. *State v. Pulse,* 83 Hawai'i 229, 246, 925 P.2d 797, 814 (1996). When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/ wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence

---

10. On March 21, 2000, the family court sentenced Peseti to a five-year term of probation, subject to incarceration for one year as a condition of probation. On April 7, 2000, Peseti filed a motion for reconsideration of sentence. On April 17, 2000, the family court conducted a hearing on the matter and granted Peseti's motion for reconsideration in part. More specifically, in its amended judgment, the family court suspended eleven months of Peseti's one-year prison term, on condition that Peseti secure a place of residence that was acceptable to his probation officer, presumably with no minor children residing therein.

that require a "judgment call" on the part of the trial court. *Id.* at 246–47, 925 P.2d at 814–15 (citations omitted).

*Cordeiro,* 99 Hawai'i at 403–04, 56 P.3d at 705–06.

## III. *DISCUSSION*

A. *The Family Court Committed An Abuse Of Discretion By Refusing To Permit Defense Counsel To Cross-Examine The Complainant Regarding Her Recantation Of Her Allegations Of Sexual Abuse By Peseti, Thereby Violating Peseti's Right To Confront Adverse Witnesses As Guaranteed By Article I, Section 14 Of The Hawai'i Constitution.*

Peseti argues that the family court erred in concluding that the complainant's recantation of her allegations of sexual abuse constituted a privileged communication under the HRE and, therefore, that her testimony relating thereto was inadmissible at trial. Peseti contends that the record fails to establish that the complainant's recantation falls within any statutory privilege set forth in the HRE, inasmuch as there was no evidence adduced from which the family court could have concluded that the recantation was a confidential communication, much less have made a finding as to whom the communication was made. He further asserts, assuming *arguendo* that the complainant's recantation constituted a privileged communication, that the complainant's invocation of a statutory privilege must yield at trial to Peseti's constitutional right to confront adverse witnesses as guaranteed by the United States and Hawai'i Constitutions, *see supra* note 3. Peseti maintains that the policy interests underlying the victim-counselor privilege cannot trump the constitutional right to cross-examine adverse witnesses under circumstances, as in the present case, in which the outcome of the proceeding essentially turns on the complainant's credibility [11] and the "communication" at issue is a recantation of the accusation on which the very status of "victim" is premised. Peseti argues that, inasmuch as the question whether the complainant had in fact recanted her allegations

of sexual abuse was critical to the jury's assessment of her credibility, there was a reasonable possibility that the family court's refusal to permit cross-examination relating thereto contributed to the guilty verdict and, therefore, was not harmless beyond a reasonable doubt.

By contrast, the prosecution contends that the family court's decision to limit defense counsel's cross-examination of the complainant did not violate Peseti's right to confront adverse witnesses, inasmuch as defense counsel adduced sufficient evidence at trial—namely, the testimony of the confidante sister, the additional sister, HPD Detective Towne, and the hānai mother—amply to put forth its theory of the case. The prosecution asserts that the jury heard substantial testimony from the aforementioned witnesses that the complainant was unhappy with her home life due to excessive "lickings" and "too many chores," that she and the confidante sister had decided to speak with their school counselor in order to be placed by CPS in a foster home (as had previously occurred with another one of the complainant's sisters), and that Peseti did not in fact commit the charged offense. More specifically, notwithstanding the family court's decision to sustain the deputy prosecuting attorney's (DPA's) objection to defense counsel's cross-examination relating to the complainant's recantation, the prosecution argues that the jury was nevertheless apprised of the possibility that the complainant had recanted her allegations at some point in time, which, in effect, further strengthened the defense's contention that the complainant was not a credible witness. Put simply, the prosecution asserts that, even assuming the family court committed an abuse of discretion in limiting defense counsel's cross-examination of the complainant, there was no reasonable possibility that the result reached at trial would have been different and, therefore, that any error would have been harmless beyond a reasonable doubt. We disagree.

■■■ The sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution guarantee

---

11. Peseti voluntarily waived his right to testify on his own behalf at trial.

a criminal defendant's right to confront adverse witnesses, *see supra* 3.[12] "The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him [or her], and the right to conduct cross-examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). With respect to the latter,

> [c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.,* discredit, the witness.... A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.... We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

*Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (citations omitted); *see also Balisbisana,* 83 Hawai'i at 115, 924 P.2d at 1221 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) for the proposition that " 'the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination[,] ... [and] the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination' ") (brackets in original) (emphasis omitted).

By contrast, statutory privileges, such as the victim-counselor privilege at issue in the present matter,[13] operate to preclude the admission at trial of certain classes of confidential communications. *See* 1 *McCormick on Evidence* § 72, at 269 (John W. Strong ed., 4th ed.1992). "It has long been recognized that privileges, by their very nature, restrict access to information[,] which would otherwise be disclosed." *Goldsmith v. State,* 337 Md. 112, 651 A.2d 866, 876 (1995). The "policy basis" in which the victim-counselor privilege is grounded is the perceived need to "encourage[ ] and protect[ ] the counseling of emotionally distressed victims of violent crimes by according privilege status to confidential communications made in the course of the counseling process," on the basis that " 'counseling of victims is most successful when the victims are assured [that] their thoughts and feelings will remain confidential and will not be disclosed without their permission.' " *See* Commentary to HRE Rule 505.5 (1993) (quoting N.J. Stat. Ann. §§ 2A:84A 22.13 and 22.15 (1991) (brackets in original)). The scope of a statutory privilege, however, is tempered by the principle that " 'privileges preventing disclosure of relevant evidence are not favored and may often give way to a strong public interest.' " *State v. L.J.P.,* 270 N.J.Super. 429, 637 A.2d 532, 537 (1994) (citation omitted) (holding that the trial court committed reversible error in precluding the victim's psychologist from testifying as to the victim's recantation of her allegation of molestation by the defendant and to the victim's motivation for fabricating her allegations). For present purposes, we assume that the complainant's recantation constituted a privileged communication for purposes of the HRE, inasmuch as the record before us reflects that the complainant either recanted to her CPS counselor, *see* HRE Rule 505.5(b), or to her psychologist, *see* HRE Rule 504.1(b); un-

12. "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is ... a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

13. For purposes of the present matter, we assume that the statutory privilege at issue is the victim-counselor privilege set forth in HRE Rule 505.5(b). Although it is unclear from the record before us precisely which statutory privilege the DPA relied upon in objecting to defense counsel's cross-examination of the complainant, both the prosecution and Peseti concede that the victim-counselor privilege is most appropriate as applied to the facts of the present case.

der either circumstance, the recantation would constitute a privileged communication within the meaning of the rules.[14]

■ While this court has, in other contexts, addressed the interrelationship between the HRE and the constitutional right of confrontation, *see State v. Apilando,* 79 Hawai'i 128, 141, 900 P.2d 135, 148 (1995) (holding that the admission of the complainant's videotaped interview with police, in lieu of her direct examination, violated the defendant's right of face-to-face confrontation); *Balisbisana,* 83 Hawai'i at 116, 924 P.2d at 1222 (holding that the circuit court abused its discretion in excluding evidence from which the jury could have inferred that the complainant had a motive to fabricate the charges against the defendant), we have yet to resolve a direct conflict between a criminal defendant's assertion of his constitutional right to cross-examine adverse witnesses and a witness' invocation at trial of a statutory privilege appearing in the HRE. We now hold that, when a statutory privilege interferes with a defendant's constitutional right to cross-examine, then, upon a sufficient showing by the defendant, the witness' statutory privilege must, in the interest of the truth-seeking process, bow to the defendant's constitutional rights.

In *Davis,* the United States Supreme Court addressed the question whether a protective order, which prohibited the defense in a criminal case from questioning a witness concerning his juvenile record, violated the defendant's right to confront adverse witnesses under the sixth amendment to the United States Constitution. *Davis,* 415 U.S. at 309–16, 94 S.Ct. 1105. At trial, defense counsel sought to cross-examine a crucial prosecution witness regarding possible pressure by the police to testify against the defendant, based on the witness' status as a juvenile probationer. *Id.* The trial court granted the prosecution's motion for a pro-

tective order, and the Alaska Supreme Court subsequently affirmed the trial court's ruling. *Id.* The United States Supreme Court reversed, holding that the defendant's sixth amendment right of confrontation trumped the State's policy interest in protecting the confidentiality of the juvenile's record. *Id.* at 319–20. More specifically, the *Davis* Court rejected the Alaska Supreme Court's conclusion that the cross-examination that the trial court did permit had adequately developed the issue of bias before the jury, inasmuch as the mere inquiry, without more, as to whether the witness was biased essentially precluded defense counsel from making "a record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Id.* at 318, 94 S.Ct. 1105. The *Davis* Court further emphasized the importance of the excluded testimony, noting that:

> [w]e cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness'] testimony[,] which provided "a crucial link in the proof ... of petitioner's act." (Citation omitted.) The accuracy and truthfulness of [the witness'] testimony were key elements in the State's case against petitioner. The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of [the witness'] vulnerable status as a probationer, ... as well as of [the witness'] possible concern that he might be a suspect in the investigation.

*Id.* at 317–18. Although the *Davis* Court did not challenge the validity of the State's interests in protecting the anonymity of juvenile offenders, it nevertheless recognized that

---

14. The alternative assumption—*i.e.,* that the complainant's recantation did *not* constitute a privileged communication for purposes of the HRE—would not alter the outcome of this case. Assuming *arguendo* that neither the victim-counselor nor the psychologist-client privilege applied to the present matter, the family court would have abused its discretion in refusing to permit

defense counsel to cross-examine the complainant regarding her recantation of her allegations of Peseti's sexual abuse, inasmuch as the subject matter was relevant to establishing the complainant's motive for fabricating her allegations and to undermine her credibility. *See* HRE Rule 402 (1993) ("All relevant evidence is admissible....").

[s]erious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry ... [and][w]hatever temporary embarrassment might result to [the witness] or his family by disclosure of his juvenile record ... is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness.

*Id.* (some brackets added and some in original); *see also Salazar v. State,* 559 P.2d 66, 79 (Alaska 1976) (holding that "[w]hen ... the defendant's right to confront effectively the witnesses against him by exploring their possible bias or prejudice is balanced against a rule based solely on policy grounds, the defendant's constitutional rights must prevail"); *Neku v. United States,* 620 A.2d 259, 263 (D.C.1993) (holding that "when a defendant proffers evidence of prior inconsistent statements by a witness who is important to the government's case and those statements otherwise would be protected by the attorney-client privilege, the evidence must be admitted on proper foundation if, in the trial judge's view, it is sufficiently probative on credibility to outweigh the interests served by the privilege"); *Bobo v. State,* 256 Ga. 357, 349 S.E.2d 690, 692 (1986) (holding that, upon a proper showing that the proffered evidence was critical to the defense and that substantially similar evidence was otherwise unavailable to the defendant, a witness' claim of psychiatrist-patient privilege must give way to the defendant's constitutional right to confront adverse witnesses); *People v. Foskey,* 136 Ill.2d 66, 143 Ill.Dec. 257, 554 N.E.2d 192, 206 (1990) (concluding that the defendant's sixth amendment right of confrontation supercedes the witness' claim of marital privilege where the defendant was cognizant of specific information tending to establish the witness' bias and motive to falsify her testimony); *L.J.P.,* 637 A.2d at 538 ("The defendant's legitimate need for critical evidence and his right to confront his accuser with her repudiation of her allegations was far more compelling than the interests in confidentiality.").

Although it stands to reason that the right of confrontation via cross-examination, as guaranteed by article I, section 14 of the Hawai'i Constitution, will not trump a statutory privilege in every case in which a conflict arises between the two, we believe that fundamental fairness entitles a defendant to adduce evidence of a statutorily privileged confidential communication at trial when the defendant demonstrates that: "(1) there is a legitimate need to disclose the protected information; (2) the information is relevant and material to the issue before the court; and (3) the party seeking to pierce the privilege shows by a preponderance of the evidence that no less intrusive source for that information exists." *L.J.P.,* 637 A.2d at 537 (citations and internal quotation marks omitted). In the present case, defense counsel sought to elicit testimony from the complainant regarding her recantation of her allegations of sexual abuse by Peseti to demonstrate her motive to fabricate her version of the events in order to be placed in the foster care system. Upon the DPA's objection based on "patient privacy," defense counsel argued that the proffered recantation was material to the complainant's motive to fabricate the allegations of sexual abuse and to her credibility as a critical witness for the prosecution. The family court sustained the DPA's objection, prohibiting *all* inquiry into the complainant's recantation *to her victim counselor,* thereby depriving the jury of a crucial fact from which it could have drawn reasonable inferences, favorable to Peseti, relating to the complainant's credibility and motive to fabricate.

It is true that some defense witnesses testified that they disbelieved the complainant's version of the events. It is also true that one of the complainant's sisters—the only witness to do so—testified that the complainant had, at some time in the past, admitted that the incident "didn't happen." Moreover, the circuit court permitted Peseti to cross-examine the complainant regarding her alleged recantation to her sister, which she denied, thereby adducing evidence from which the jury could have evaluated the relative credibility of the complainant vis-a-vis her sister. The circuit court, however, deprived Peseti of the opportunity directly to question the complainant regarding whether she had recanted her allegations of sexual abuse to her *victim counselor* and whether she had fabricated her allegations in order to be removed from the Peseti home. We be-

lieve that the proffered cross-examination was essential to the truth-finding process in the present matter because (1) the complainant might have admitted to recanting to her victim counselor and offered an explanation or motive for doing so or, in the alternative, (2) the complainant might have denied the alleged recantation to her victim counselor, a presumably dispassionate witness lacking any motive to fabricate, at which point defense counsel would have had the opportunity to question the victim counselor regarding the complainant's communications during the counseling process. The victim counselor's testimony in the foregoing regard may well have aided the jury in evaluating the complainant's credibility regarding her alleged recantation. "[T]he credibility of a witness is always relevant[.]" *Cordeiro*, 99 Hawai'i at 422, 56 P.3d at 724; *see also State v. Okumura*, 78 Hawai'i 383, 399, 894 P.2d 80, 96 (1995) ("The credibility of a prosecuting witness in a criminal case is always relevant[.]") (Citation omitted.). Inasmuch as the family court prohibited defense counsel from eliciting relevant evidence that could have affected the jury's assessment of the complainant's credibility and motive to fabricate the allegations of Peseti's sexual abuse, we believe that Peseti was not afforded "the constitutionally required threshold level of inquiry," *see Balisbisana*, 83 Hawai'i at 114, 924 P.2d at 1220, under the Hawai'i Constitution; accordingly, the family court committed an abuse of discretion. *See Davis*, 415 U.S. at 319, 94 S.Ct. 1105; *Foskey*, 143 Ill.Dec. 257, 554 N.E.2d at 206 (holding that the defendant's federal and state constitutional rights to cross-examine witnesses trumped the defendant's wife's invocation of the marital privilege where the "opportunity to cross-examine [her] on the question of fabrication was surpassingly important to a determination of her credibility").

■ As previously noted, the denial of a defendant's right to confront adverse witnesses is subject to the harmless-beyond-a-reasonable-doubt standard of review. *See Balisbisana*, 83 Hawai'i at 113–14, 924 P.2d at 1219–20.

The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* at 117, 924 P.2d at 1223 (citation and internal quotation signals omitted).

Applying the *Balisbisana* formulation to the present matter, it is intuitively obvious that, had defense counsel been permitted to cross-examine the complainant regarding communications—including her recantation—with the victim counselor, the jury might have believed the defense's theory of the case—*i.e.*, that the complainant had fabricated her allegations and offered false testimony in order to "get out of the home." Specifically, it is undisputed that the complainant was the only witness to testify that Peseti had abused her on January 1, 1998 and, therefore, was a critical prosecution witness. Inasmuch as there was neither third-party eyewitness testimony adduced at trial nor any physical evidence corroborating the complainant's version of the events, the prosecution's case rested solely on the complainant's credibility. Tautologically, had the jury believed the defense's theory of the case, the jury would likely have acquitted Peseti of the charged offense. Consequently, there is a reasonable possibility that the error complained of contributed to Peseti's conviction, and, thus, we hold that the family court's abuse of discretion was not harmless beyond a reasonable doubt.

B. *The Family Court's Decision To Seal The Complainant's CPS Records Did Not Violate Peseti's Constitutional Right To Due Process Under The Fifth And Fourteenth Amendments To The United States Constitution and Article I, Section 5 Of The Hawai'i Constitution.*

■ Peseti argues that the family court's order to seal the complainant's CPS records

violated his "due process rights to [a] fair trial and [to] present a defense," as guaranteed by the United States and Hawai'i Constitutions. Peseti primarily relies on the United States Supreme Court's decision in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), to support his contention that the family court erred in not producing the CPS records for defense counsel in preparation for his trial. Peseti not only argues that there was insufficient foundation for the family court's finding that the victim-counselor privilege applied to the complainant's CPS records, but also that, assuming the privilege did in fact apply, such a privilege must nonetheless yield to Peseti's due process rights under *Ritchie*.

The prosecution maintains that the family court correctly found that the victim-counselor privilege applied to the complainant's CPS records, inasmuch as Peseti failed to satisfy his burden of demonstrating that the complainant had waived the privilege. In addition, the prosecution contends that the family court's *in camera* review of the redacted and unredacted materials contained in the CPS file afforded Peseti his right to due process under *Ritchie*. We agree with the prosecution.

In *Ritchie*, the United States Supreme Court considered whether the due process clause of the fourteenth amendment to the United States Constitution entitled the defendant, who was charged with sexually assaulting his thirteen-year-old daughter, to obtain *pretrial* discovery of the investigative files of the complainant's case generated by Children and Youth Services (CYS), a state-created "protective service agency charged with investigating cases of suspected mistreatment and neglect." *Ritchie*, 480 U.S. at 42–43, 107 S.Ct. 989. During pretrial discovery, the defendant served CYS with a subpoena, seeking access to the complainant's records. *Id.* at 43, 107 S.Ct. 989. CYS refused to comply with the subpoena, on the basis that the records were privileged under a Pennsylvania statute, which provided that all reports and other information obtained in the course of a CYS investigation were confidential, subject to an exception providing for court-ordered disclosure. *Id.* Although the

trial court did not examine the entire file, it refused to order disclosure. *Id.* At trial, the complainant testified on behalf of the prosecution, and defense counsel cross-examined her at length regarding the alleged assaults and her reasons for not reporting the incidents to the police sooner than she did; the trial judge did not limit the scope of defense counsel's cross-examination. *Id.* at 44–45, 107 S.Ct. 989. The defendant was subsequently convicted of all the charged counts and sentenced to prison. *Id.* at 45, 107 S.Ct. 989.

On appeal, the Pennsylvania Superior Court held that the failure to disclose the contents of the CYS file violated the defendant's right to confront adverse witnesses but held that the right of confrontation did not entitle the defendant to unfettered access to the file. *Id.* at 45, 107 S.Ct. 989. Rather, the intermediate appellate court held that, on remand, the trial judge was required first to examine the confidential material *in camera* and release only the verbatim statements made by the daughter to the CYS counselor. *Id.* On further appeal by the prosecution, the Pennsylvania Supreme Court agreed that the defendant's conviction must be vacated, but disagreed that the search for material evidence should be limited to the daughter's verbatim statements. *Id.* at 46, 107 S.Ct. 989. The Pennsylvania Supreme Court concluded that the defendant, through his lawyer, was entitled to review the entire file to search for any helpful evidence, reasoning that, by denying the defendant access to the entire file, the trial court's order had violated both the confrontation and compulsory process clauses of the sixth amendment to the United States Constitution. *Id.*

The United States Supreme Court affirmed the Pennsylvania Supreme Court's decision in part and reversed it in part. *Id.* at 61, 107 S.Ct. 989. In rendering its decision, the *Ritchie* Court engaged in the following analysis, with which we agree:

This Court has never squarely held that the Compulsory Process Clause [of the sixth amendment] guarantees the right to discover the identity of witnesses, or to require the government to produce exculpatory evidence. Instead, the Court tradi-

tionally has evaluated claims such as those raised by [the defendant] under the broader protections of the Due Process Clause of the Fourteenth Amendment. *See* ... *Brady v. Maryland,* 373 U.S. 83, [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963). Because the applicability of the Sixth Amendment to this type of case is unsettled, and because our Fourteenth Amendment precedents addressing the fundamental fairness of trials establish a clear framework for review, we adopt a due process analysis for purposes of this case. Although we conclude that compulsory process provides no *greater* protections in this area than those afforded by due process, we need not decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment. It is enough to conclude that on these facts, [the defendant's] claims more properly are considered by reference to due process.

. . . .

It is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. Although courts have used different terminologies to define "materiality," a majority of this Court has agreed [that] evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

At this stage, of course, it is impossible to say whether any information in the CYS records may be relevant to [the defendant's] claim of innocence, because neither the prosecution nor defense counsel has seen the information, and the trial judge acknowledged that he had not reviewed the full file. The [prosecution], however, argues that no materiality inquiry is required, because a statute renders the contents of the file privileged. Requiring disclosure here, it is argued, would override the [state's] compelling interest in confidentiality on the mere speculation that the file "might" have been useful to the defense.

. . . .

A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [prosecution's] files. Although the eye of an advocate may be helpful to a defendant in ferreting out information, this Court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland,* 373 U.S. 83, [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), it is the [prosecution] that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. *See Weatherford v. Bursey,* 429 U.S. 545, 559, [97 S.Ct. 837, 51 L.Ed.2d 30] (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one[.]").

We find that [*the defendant's*] *interest* (as well as that of the state) *in ensuring a fair trial can be protected fully by requiring that the CYS files be submitted only to the trial court for in camera review.* Although this rule denies [the defendant] the benefits of an "advocate's eye," we note that the trial court's discretion is not unbounded. If a defendant is aware of specific information contained in the file (*e.g.,* the medical report), he is free to request it directly from the court, and argue in favor of its materiality. Moreover the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial.

To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the [state's] compelling interest in protecting its child-abuse infor-

mation. If the CYS records were made available to defendants, even through counsel, it could have a seriously adverse effect on [the state's] efforts to uncover and treat abuse. Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim. A child's feelings of vulnerability and guilt and his or her unwillingness to come forward are particularly acute when the abuser is a parent. It therefore is essential that the child have a state—designated person to whom he may turn, and to do so with the assurance of confidentiality. Relatives and neighbors who suspect abuse also will be more willing to come forward if they know that their identities will be protected. Recognizing this, the [state]—like all other States—has made a commendable effort to assure victims and witnesses that they may speak to the CYS counselors without fear of general disclosure. The [state's] purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result.

. . . .

We agree that [the defendant] is entitled to know whether the CYS file contains information that may have changed the outcome of his trial had it been disclosed. Thus we agree that a remand is necessary. We disagree with the decision of the Pennsylvania Supreme Court to the extent that it allows defense counsel access to the CYS file. *An in camera review by the trial court will serve [the defendant's] interest without destroying the [state's] need to protect the confidentiality of those involved in child-abuse investigations.* . . . *Ritchie,* 480 U.S. at 56–57, 59–61, 107 S.Ct. 989 (some citations and internal quotation marks omitted) (footnotes omitted) (some brackets added and some deleted) (some emphasis added, some deleted, and some in original). *Cf. Estrada,* 69 Haw. at 216, 738 P.2d at 821 ("No absolute privilege insulates police records from discovery. A trial judge should first conduct an *in camera* review of

sensitive police records to fix the scope of discovery on those confidential items sought.") (Citation omitted.).

In sum, there are cogent reasons for disallowing *general* pretrial discovery of privileged information, but allowing access to such information upon a proper showing by the defendant that the information "may . . . change[ ] the outcome of [the] trial," *see Ritchie,* 480 U.S. at 61, 107 S.Ct. 989, either before trial has commenced if the same has become apparent, *see id.* at 61–62, 107 S.Ct. 989 ("[T]here might well be a confrontation violation if . . . a defendant is denied pretrial access to information that would make possible effective cross-examination of a crucial prosecution witness.")(Blackmun, J. concurring); *see also id.* at 66, 107 S.Ct. 989 ("[T]he right of cross-examination . . . may be significantly infringed by events occurring outside the trial itself, such as the wholesale denial of access to material that would serve as the basis for a significant line of inquiry at trial.")(Brennan, J., dissenting, joined by Marshall, J.), or as the same becomes material as the proceedings unfold. *See Goldsmith,* 651 A.2d at 875 (holding that "the psychotherapist-patient privilege protects a doctor from having to furnish information for pre-trial discovery review, [but] the privilege may not always protect a doctor from furnishing exculpatory evidence at trial pursuant to a trial subpoena or subpoena *duces tecum* . . . ."). As the *Ritchie* Court observed, the trial court will often lack sufficient information— *e.g.,* whether the complainant will testify at trial or what the substance of that testimony would be—at the pretrial stage adequately to determine whether the defendant's need for the privileged information outweighs the witness' right to assert a statutory privilege. Such pretrial determinations would, by their very nature, often be conjectural and would risk the unnecessary disclosure of the privileged material in question. On the other hand, depending upon the circumstances, they may not. Accordingly, we believe that the trial judge is in the best position, in the exercise of his or her sound discretion, to determine the optimal time for evaluating the relative significance of proffered exculpatory but otherwise privileged material.

In the present matter, the family court conducted an *in camera* review of the complainant's CPS records. The family court thereafter produced the relevant portions to defense counsel, including the transcripts of the CPS counselor's interview with the complainant. Having carefully and independently reviewed the complainant's CPS file in order to determine whether the family court abused its discretion in producing the redacted portions of the file, we hold that family court accorded Peseti the due process discovery rights mandated by *Ritchie*, after having conducted its *in camera* review, and, thus, further hold that the family court's order to seal the remaining portions of the CPS file for appellate review did not constitute an abuse of discretion.

## IV. CONCLUSION

In light of the foregoing analysis, we vacate the family court's amended judgment of conviction and sentence and remand this case for a new trial.