STATE OF HAWAI`I, Plaintiff-Appellee,
v.
RIC PADEKEN, Defendant-Appellant.
No. 28755
Intermediate Court of Appeals of Hawaii.
December 28, 2009.
Edie A. Feldman, for Defendant-Appellant.
James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff-Appellee.
Dorothy Sellers and Kimberly Tsumoto Guidry, Deputy Attorneys General, on the brief for Amicus Curiae Attorney General of the State of Hawai`i.

MEMORANDUM OPINION
NAKAMURA, C.J., WATANABE and FUJISE, JJ.
Defendant-Appellant Ric Padeken (Padeken) appeals from the Judgment entered on August 28, 2007, by the Circuit Court of the First Circuit (circuit court).[1] Plaintiff-Appellee State of Hawai`i (State) charged Padeken by indictment with three counts of third-degree sexual assault and one count of attempted third-degree sexual assault. The alleged victim was the minor daughter (Minor) of Padeken's then girlfriend. Counts I and II charged Padeken with third-degree sexual assault, in violation of Hawaii Revised Statutes (HRS) § 707-732 (1) (c) (Supp. 2008);[2] Count III charged him with third-degree sexual assault, in violation of HRS § 707-732(1)(b); and Count IV charged him with attempted thirddegree sexual assault, in violation of HRS §§ 705-500 (1993)[3] and 707-732(1)(b).[4]
The charges were based on allegations that Padeken had placed his hand on Minor's breast on two occasions, placed his hand on Minor's buttock, and attempted to insert his tongue in Minor's mouth. During the time period of the alleged offenses, Minor was thirteen and fourteen years old.
Prior to trial, Padeken obtained copies of three confidential psychological reports concerning Minor. The circuit court precluded Padeken, based on article I, section 14 of the Hawai`i Constitution and Hawaii Rules of Evidence (HRE) Rule 504.1 (Supp. 2002) (psychologist-client privilege) and HRE Rule 505.5 (1993) (victim-counselor privilege), from using privileged information contained in the reports to cross-examine Minor. Following a jury trial, Padeken was found guilty as charged. The circuit court sentenced Padeken to concurrent terms of five years of probation, subject to a one-year term of imprisonment.
On appeal, Padeken argues that: 1) the circuit court's ruling barring him from using Minor's privileged communications, which were set forth in the reports concerning Minor, to cross-examine or impeach Minor violated Padeken's constitutional right of confrontation; 2) the circuit court abused its discretion in precluding the use of psychological reports concerning Minor's mother (Mother) because Mother waived any privilege by producing the reports to defense counsel; 3) the circuit court abused its discretion in determining that one of the reports concerning Minor arose out of "counseling or treatment" within the meaning of HRE Rule 505.5(b); and 4) the Deputy Prosecuting Attorney (DPA) engaged in prosecutorial misconduct during the trial.[5] We affirm the Judgment.[6]

BACKGROUND
Padeken began living with Minor and her family after dating Mother for about six months. Minor was thirteen at that time. Minor testified that shortly after moving in, Padeken began to sexually abuse her. Minor testified about the incidents alleged in the indictment, and related that Padeken came into her bedroom and rubbed her breasts under her shirt on at least two occasions, attempted to insert his tongue in her mouth, and placed his hands on her buttocks. Padeken told Minor that he engaged in this conduct so that Minor would "obey him." Minor felt "[g]ross and violated[,]" and she told Padeken "no," but he did not listen.
Padeken warned Minor that if she disclosed what was happening to anyone, she would be sent to a foster home and that if her grandparents found out, they might worry and become sick. Minor testified that she told Mother what Padeken was doing to her. Although Mother did not appear to believe Minor, Mother said she would talk to Padeken. Minor testified that on several occasions, Padeken made her remove her clothing and lie naked on the bed, while he watched, which Padeken claimed was "[f]or obedience." Eventually, Minor reported Padeken's sexual abuse to a school counselor who notified the police.
Padeken was arrested, waived his constitutional rights, and agreed to make a statement to Honolulu Police Department Detective Phillip Lavarias. A redacted version of Padeken's recorded statement was admitted into evidence and played for the jury. In his statement, Padeken denied doing anything wrong. Padeken indicated that because they were often in close proximity to each other, it was possible that he may have accidentally and unintentionally touched Minor's breast. He admitted that on one occasion, he entered Minor's bedroom and mistakenly kissed her on the lips because the room was dark. Pakeden acknowledged that in Mother's presence, he had Minor remove her shirt and bra as a form of discipline, but stopped this because it did not seem to faze Minor.
Mother was called to testify by the defense. Mother testified that the first time she heard about the sexual abuse allegations was the night Padeken was arrested. Mother was present on two occasions when Padeken disciplined Minor by making Minor remove her clothing. Mother agreed that "[i]t was very humiliating" and "demeaning for [Minor]"; that Mother felt very uncomfortable about this form of discipline; and that Mother "made a mistake." Padeken did not testify.

DISCUSSION

I.
Padeken argues that the circuit court's in limine ruling, which precluded him from using Minor's privileged communications to cross-examine or impeach Minor, violated his constitutional right of confrontation. We disagree.

A.
We start with a review of the applicable law. The psychologist-client and victim-counselor evidentiary privileges are set forth, respectively, in HRE Rules 504.1 and 505.5. HRE Rule 504.1(b) provides in relevant part:
General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the client's mental or emotional condition . . . among the client, the client's psychologist, and persons who are participating in the diagnosis or treatment under the direction of the psychologist, including members of the client's family.
HRE Rule 505.5(b) provides in relevant part:
General rule of privilege. A victim has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to a victim counselor for the purpose of counseling or treatment of the victim for the emotional or psychological effects of sexual assault, domestic violence, or child abuse or neglect
The victim-counselor privilege set forth in HRE Rule 505.5 "encourages and protects the counseling of emotionally distressed victims of violent crimes by according privilege status to confidential communications made in the course of the counseling process." Commentary to HRE Rule 505.5.
In State v. Peseti, 101 Hawai`i 172, 65 P.3d 119 (2003), the Hawai`i Supreme Court considered the interplay between the statutory victim-counselor privilege under HRE Rule 505.5(b) and a criminal defendant's constitutional right to confront adverse witnesses as guaranteed by article I, section 14 of the Hawai`i Constitution. Id. at 174, 180 n.13, 65 P.3d at 121, 127 n.13. Peseti was charged with third-degree sexual assault for knowingly subjecting his hanai daughter to sexual contact. Id. at 175, 65 P.3d at 122. Before trial, Peseti was told by a Child Protective Services (CPS) social worker that the complainant had recanted her allegations of sexual abuse to a victim counselor. Id. at 175-76, 65 P.3d at 122-23. At trial, Peseti sought to cross-examine the complainant as to whether she had previously told her "therapist" that her allegations of sexual abuse by Peseti "really didn't happen[.]" Id. at 177, 65 P.3d at 124. The circuit court sustained the prosecutor's objection to Peseti's cross-examination relating to the complainant's recantation to the "therapist" on the ground that complainant's statements were privileged. Id.
The supreme court vacated Peseti's conviction, holding that, "when a statutory privilege interferes with a defendant's constitutional right to cross-examine, then, upon a sufficient showing by the defendant, the witness' statutory privilege must, in the interest of the truth-seeking process, bow to the defendant's constitutional rights." Id. at 181, 65 P.3d at 128. The supreme court articulated the following test for determining whether the right of confrontation under the Hawai`i Constitution trumped a statutory privilege:
Although it stands to reason that the right of confrontation via cross-examination, as guaranteed by article I, section 14 of the Hawai`i Constitution, will not trump a statutory privilege in every case in which a conflict arises between the two, we believe that fundamental fairness entitles a defendant to adduce evidence of a statutorily privileged confidential communication at trial when the defendant demonstrates that: `(1) there is a legitimate need to disclose the protected information; (2) the information is relevant and material to the issue before the court; and (3) the party seeking to pierce the privilege shows by a preponderance of the evidence that no less intrusive source for that information exists.'
Id. at 182, 65 P.3d at 129 (emphasis added) (quoting State v. L.J.P., 637 A.2d 532, 537 (N.J. Super. Ct. App. Div. 1994)).
In 2004, after the Peseti decision, article I, section 14 of the Hawai`i Constitution was amended by adding the following underscored language to the confrontation clause provision, so that, as amended, article I, section 14 now reads in pertinent part as follows:
In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused, provided that the legislature may provide by law for the inadmissibility of privileged confidential communications between an alleged crime victim and the alleged crime victim's physician, psychologist, counselor or licensed mental health professional . . . .
Hawai`i Const. art. I, § 14 (emphasis added).

B.
On appeal, Padeken asserts that under Peseti, his constitutional right of confrontation trumps the psychologist-client privilege and the victim-counselor privilege set forth, respectively, in HRE Rule 504.1 and Rule 505.5. Padeken argues that notwithstanding the 2004 amendment to article I, section 14 of the Hawai`i Constitution, the Peseti test still stands and that under that test, he was entitled to use Minor's privileged communications to impeach Minor.
Amicus Curiae Attorney General of the State of Hawai`i (Amicus Curiae) asserts that the post-Peseti, 2004 amendment to article I, section 14, "imbues the legislature's statutory privileges with absolute protection under the State Constitution." The State agrees with the Amicus Curiae and asserts that pursuant to the 2004 amendment to article I, section 14, Minor's communications with her mental health counselor and therapist were "absolutely privileged." The State further argues that assuming arguendo that Minor's communications were not absolutely privileged, Padeken failed to make the showing required by Peseti to pierce the psychologist-client and victim-counselor privileges.
We conclude that Padeken failed to demonstrate that he was entitled to use Minor's privileged communications under the test set forth in Peseti, and we affirm the circuit court's in limine ruling on that basis. We do not address or decide what effect the 2004 amendment to article I, section 14 of the Hawai`i Constitution has on determining whether a defendant may use the privileged communications of an alleged crime victim at trial. Padeken does not contend that the 2004 amendment to article I, section 14 served to weaken the psychologist-client and victim-counselor privileges in any way. In addition, because state constitutional requirements cannot be less protective of a criminal defendant's rights than the federal constitution, we presume that the test formulated by the Hawai`i Supreme Court in Peseti was also designed to comply with federal constitutional requirements. Thus, Padeken at minimum was required to satisfy the Peseti test in order to demonstrate that he was entitled to use Minor's privileged communications.
Under the Peseti test, Padeken had the burden of demonstrating "(1) there is a legitimate need to disclose the protected information; (2) the information is relevant and material to the issue before the court; and (3) . . . by a preponderance of the evidence that no less intrusive source for that information exists." Peseti at 182, 65 P.3d at 129. Padeken sought to use Minor's confidential communications to impeach her testimony at trial. Padeken contends that he could have used Minor's privileged communications to point out inconsistences in her testimony and to show her possible bias and motive to fabricate the allegations against Padeken.
We have carefully reviewed the reports containing Minor's privileged communications and the record in this case, and we conclude that the impeachment value of Minor's privileged communications was very minimal. We further conclude that Padeken did not meet his burden under Peseti of demonstrating a legitimate need to disclose the protected information or that there was no less intrusive source for the protected information.
The inconsistencies on which Padeken sought to impeach Minor involved non-critical or collateral discrepancies and would not have served to cast doubt on Minor's testimony in any significant way. While the cited inconsistences may have suggested a lack of perfect memory by Minor, they would not have reasonably supported an inference that Minor had lied about being sexually abused by Padeken.
Furthermore, there was no legitimate need for Padeken to use Minor's privileged communications because he was able to impeach Minor through other means that were at least as effective. Minor was subjected to extensive cross-examination by Padeken at trial. Padeken established through cross-examination that Minor's memory of the events was not perfect. Minor acknowledged that she was not sure of the exact sequence or timing of the alleged incidents of sexual abuse. Padeken also impeached Minor with discrepancies between her trial testimony and statements she had given to the police.
Through evidence presented at trial, Padeken was also able to develop his claim that Minor was biased and had fabricated the allegations against Padeken because she disliked him and wanted to escape his discipline. Therefore, there was no legitimate need to use Minor's privileged communications to impeach Minor on these grounds and there was a less intrusive source for such impeachment. Padeken elicited evidence that he was a much stricter disciplinarian than Mother and that this caused friction between Minor and Padeken. Minor testified at trial that she did not like Padeken's strict house rules and that she and Padeken had disagreements about her chores, her choice of friends, and her refusal to attend church.
The record shows that Padeken had less intrusive, nonprivileged sources for the protected information. Minor provided non-privileged written and videotaped statements to the police. Moreover, Mother, who was called as a defense witness, and Padeken himself were available to provide the defense with information relevant to Minor's allegations and about why Minor might have a motive to lie. Under these circumstances, we hold that the circuit court did not violate Padeken's constitutional right of confrontation by precluding Padeken from using Minor's privileged communications to cross-examine or impeach Minor at trial.

II.
Padeken argues that "[i]t was an abuse of discretion [for the circuit court] to rule that the psychological reports regarding [Mother] were `privileged and confidential,' because [Mother] was not an alleged victim, and she waived any privilege of confidentiality by producing them to counsel." We conclude that the underlying premise of Padeken's argumentthat the circuit court precluded Padeken from using the psychological reports concerning Motheris wrong, and we accordingly reject Padeken's argument.
Prior to trial, Padeken filed a motion in limine to permit the defense to cross-examine Minor and Minor's counselor about Minor's privileged communications. The State, in turn, filed a motion in limine to preclude Padeken from using Minor's privileged communications. At the initial hearing on the two motions in limine, defense counsel apprised the circuit court that Mother had provided him five reports: three reports regarding Minor[7] and two reports regarding Mother.
Contrary to Padeken's assertion, the circuit court did not rule that the two psychological reports regarding Mother were privileged and could not be used. The motions in limine filed by Padeken and the State concerned only the privileged communications made by Minor and the reports regarding Minor. In eventually granting the State's motion in limine,[8] the circuit court only precluded Padeken from using the privileged communications contained in Minor's reports. Based on our review of the record, we conclude that the circuit court did not preclude Padeken or the State from using information contained in the reports regarding Mother. Therefore, Padeken's contention that the circuit court erred by precluding him from using Mother's reports is without merit.

III.
One of the conditions for the victim-counselor privilege to apply is that the "confidential communications [were] made to a victim counselor for the purpose of counseling or treatment . . . ." HRE Rule 505.5(b). Padeken asserts that the circuit court abused its discretion in determining that one of Minor's reports arose out of "counseling or treatment" within the meaning of HRE Rule 505.5(b). Pakeden did not raise this objection in the circuit court. Indeed, the motions in limine were litigated based on the understanding that the privileges under HRE Rules 504.1 and 505.5 applied, with the only contested issue being whether the privileges must bow to Padeken's constitutional rights. Thus, Padeken waived the claim that the HRE Rule 505.5 privilege did not apply.
Moreover, even assuming arguendo that the circuit court plainly erred in applying the victim-counselor privilege to the communications of Minor that Padeken sought to use that were in the report in question, Padeken's substantial rights were not affected. This is because such communications fell within the psychologist-client privilege under HRE Rule 504.1, which protects confidential communications made for the purpose of diagnosis. Minor's communications that Padeken sought to use that were referenced in the report were clearly confidential communications made for purpose of diagnosis.

IV.
Padeken contends that the DPA engaged in misconduct by: 1) cross-examining Mother based upon findings contained in Mother's psychological reports; 2) introducing evidence that CPS had jurisdiction over Mother's family and that a CPS worker and Minor's guardian ad litem (GAL) were present in the courtroom; 3) questioning Mother beyond the scope of her direct testimony and portraying Mother as unfit and aligned with Padeken; and 4) "track[ing] information" directly from Minor's reports in questioning Minor. We conclude that the matters of which Padeken complains did not constitute misconduct. Alternatively, we conclude that even if certain of these matters could be viewed as misconduct, they were harmless beyond a reasonable doubt.

A.
As previously discussed, the circuit court did not preclude either party from using the information contained in Mother's psychological reports. Moreover, Padeken asserts that Mother waived any privilege she may have had by disclosing these reports to defense counsel. Thus, it was not misconduct for the DPA to use such reports to cross-examine Mother.

B.
In cross-examining Mother, the DPA did not commit misconduct by referring to CPS's jurisdiction over Mother's family and the presence of a CPS social worker and Minor's GAL in the courtroom. The DPA's questioning of Mother on these matters constituted proper impeachment under HRE Rule 609.1 (1993), which permits a party to attack the credibility of a witness "by evidence of bias, interest, or motive."
Mother testified, contrary to Minor's testimony, that Minor had not told Mother about Padeken's sexual assaults and that Mother first became aware of the allegations when Padeken was arrested. The State's theory was that Mother's testimony was false and that Mother had an interest in and motive for refusing to truthfully acknowledge that Minor had contemporaneously reported the sexual abuse to Mother. In particular, Mother's failure to take action to stop the abuse would show that Mother was an unfit mother, which may jeopardize Mother's ability to have custody over Minor. In this respect, evidence that CPS had continuing jurisdiction over Mother's family and that a CPS social worker and Minor's GAL were present in the courtroom was relevant to establishing that Mother had an interest in and motive for lying about whether Minor had contemporaneously reported Padeken's sexual abuse to Mother.
In any event, we conclude that any alleged misconduct was harmless beyond a reasonable doubt. Minor and two police officers gave testimony, without objection, regarding the involvement of CPS after Minor reported Padeken's sexual abuse. These witnesses were called before Mother testified. Thus, prior to Mother's testimony, the jury was already aware that CPS had intervened. In this respect, the DPA's questions to Mother regarding the involvement of CPS were cumulative of other evidence admitted in the case. See State v. Crisostomo, 94 Hawai`i 282, 290, 12 P.3d 873, 881 (2000). Moreover, based on our review of the record, we conclude that the DPA's references to the presence of the CPS social worker and Minor's GAL in the courtroom did not affect Padeken's substantial rights or contribute to his convictions.

C.
We reject Padeken's claim that the DPA engaged in misconduct in questioning Mother beyond the scope of her direct testimony and in portraying Mother as unfit and aligned with Padeken. The evidence showed that Mother continued to be Padeken's girlfriend and then married him even after Minor reported Padeken's sexual abuse to the police. Mother also was called as a witness by the defense. The DPA was entitled to show that Mother was aligned with Padeken for the purpose of attacking her credibility on grounds of bias, interest, and motive. HRE Rule 609.1. The DPA's attempt to impeach Mother on these grounds was proper and did not constitute improper questioning beyond the scope of direct examination.

D.
We reject Padeken's claim that the DPA improperly "tracked" facts from Minor's privileged reports in questioning her. The DPA did not ask Minor questions about Minor's privileged communications. The challenged questions were the type of questions that one would expect a prosecutor to ask to elicit relevant information from Minor at trial. The DPA did not commit misconduct in questioning Minor.

CONCLUSION
We affirm the August 28, 2007, Judgment of the circuit court.
NOTES
[1] The Honorable Steven S. Alm issued the ruling regarding privileged communications which is challenged on appeal; the Honorable David William Lo presided over the trial and at sentencing; and the Honorable Derrick H.M. Chan presided over further jury deliberations and the return of the jury's verdicts.
[2] HRS § 707-732 provides in relevant part:

(1) A person commits the offense of sexual assault in the third degree if:
. . .
(b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person;
(c) The person knowingly engages in sexual contact with a person who is at least fourteen years old but less than sixteen years old or causes the minor to have sexual contact with the person; provided that:
(i) The person is not less than five years older than the minor; and
(ii) The person is not legally married to the minor[.]
[3] HRS § 705-500 provides in relevant part:

(1) A person is guilty of an attempt to commit a crime if the person:
. . .
(b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
(2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.
[4] The State also charged Padeken with promoting a detrimental drug in the third degree, in violation of HRS § 712-1249 (1993) (Count V), for possessing marijuana. Prior to trial, Padeken pleaded guilty to Count V, and he does not challenge his conviction or sentence on Count V in this appeal.
[5] The reports concerning Minor and Mother at issue in this appeal were filed under seal in the circuit court and submitted to this court under seal.
[6] Briefing in this case was completed on March 31, 2009, and oral argument was held on September 9, 2009.
[7] One of the reports regarding Minor was a report concerning Mother's non-adult children.
[8] The circuit court had preliminarily granted Padeken's motion in limine, but in response to the State's motion for reconsideration and an amicus brief filed by the Amicus Curiae, the circuit court ultimately ruled in favor of the State. The State's motion for reconsideration and the amicus brief filed by the Amicus Curiae were concerned solely with the reports regarding Minor.